RAKESTRAW v. FLOYD.

1. LANDLORD AND TENANT.—This contract construed to mean that the relation existing between the parties was that of landlord and tenant.
2. EVIDENCE—HARMLESS ERROR.—Admission of irrelevant testimony upon a point upon which there is relevant testimony is harmless error.
3. DAMAGES—NONSUIT.—In an action for punitive damages, nonsuit is improper, if there be evidence to support actual damages.
4. NONSUIT.—Refusal of nonsuit proper, because there was evidence tending to show that defendant knowingly received the proceeds of the sale of the cotton.

Before BENET, J., Spartanburg, April, 1898.    Affirmed.

Action for damages by Caroline Rakestraw against A. G. Floyd. From judgment for plaintiff, defendant appeals.

*Mr. J. T. Johnson,* for appellant, cites: *Action for punitive damages is separate and distinct from action for actual damage:* Spellman v. R. R., 35 S. C. *If paper were intended as a lease, Floyd not Lee would have signed it:* Richey v. Dupree, 20 S. C.

*Mr. Horace L. Bomar,* contra, cites: *Contract creates relation of landlord and tenant:* Carpenter *v.* Strickland, 20 S. C.; 21 S. C., 53; 40 S. C., 515. *Objection that causes of action are improperly blended must be made before trial:* 38 S. C., 486.

Mch. 6, 1899. The opinion of the Court was delivered by

MR. JUSTICE GARY. The plaintiff brought action against the defendant upon the following complaint: "I. That during the year 1895, plaintiff was a tenant on a certain portion of defendant's farm, in said county and State, known as his Walnut Grove place—she having rented from one Jamison Lee, to whom defendant had rented all of his said Walnut Grove place, and who had full power to subrent any portion of said farm. II. That on or about the 1st day of November, 1895, defendant wilfully and unlawfully took possession of, and sold and converted to his own use three bales of cotton, weighing respectively 454, 405 and 453 pounds— all of which was the lawful property of plaintiff, she having cultivated and raised the same on her said rented farm. III. That the value of said three bales of cotton so sold was $113.49. IV. That by reason of said wilful and unlawful acts of defendant in so seizing and selling said cotton, as above complained of, plaintiff was damaged in the sum of $500. Wherefore plaintiff demands judgment against the defendant for $113.49, the value of said cotton, and for $500 her damages, and for the costs of this action."

The defendant answered as follows: "I. He denies each and every allegation of said complaint. II. He has no knowledge of Jamison Lee's arrangements with plaintiff, but he alleges that said Jamison Lee was a laborer for hire, and the entire crop raised on said land was the property of this defendant. III. He alleges that he never had any contract in person or by agent with said plaintiff." The jury rendered a verdict in favor of the plaintiff for $118.75.

The defendant appealed upon the following exceptions: "1. Because his Honor erred in admitting in evidence the

19—54

lien of Jamison Lee and T. H. Fowler to A. G. Floyd, bearing date January 21, 1895, over the defendant's objection, the same being irrelevant to the issues and prejudicial to the defendant. 2. Because his Honor erred in admitting in evidence, over the defendant's objection, the lien of Jamison Lee to A. G. Floyd, dated April 3, 1895, when it is respectfully submitted that said lien is irrelevant to the issues and prejudicial to the defendant. 3. Because his Honor erred in refusing the motion for nonsuit, (a) because there was a total want of evidence to show any high-handed, malicious, wilful disregard of the plaintiff's rights; (b) because there was no evidence that the defendant ever saw, ever took possession of, ever handled or converted to his own use the property described in the complaint; (c) because the contract of Jamison Lee made him a laborer for hire. 4. Because his Honor erred in construing Jamison Lee's contract as 'a paper which created the relation of landlord and tenant between Floyd on the one hand and Lee on the other, and did not create the relationship of master and servant or employer and laborer,' and it is respectfully submitted that it was only a laborer's contract, signed by Lee alone and not a lease signed by Floyd, the landlord. 5. Because his Honor erred in refusing to charge: '1. That by the terms of Jamison Lee's contract, in writing, he was a laborer for hire, and the title to the crop was in Floyd. 2. If that is the contract under which Jamison Lee worked, and it was honestly and in good faith entered into, with no intention to injure third parties, then Jamison Lee had no power to so rent out the land, as to give the plaintiff or any one else the title to the crops.' "

The fourth exception will be first considered. The said contract is as follows: "State of South Carolina, County of Spartanburg. This agreement witnesseth that Jamison Lee agrees to work a two-horse farm on A. G. Floyd's Walnut Grove place, in a good and husband-like manner, after A. G. Floyd's direction, in the year 1895. In which work A. G. Floyd agrees to pay Jamison Lee two-thirds of all the

cotton, corn, fodder, shucks, wheat, oats and all other crops grown on said farm. Unless A. G. Floyd furnishes seed wheat and oats, when said A. G. Floyd is to pay Jamison Lee only one-half, after deducting from the part of Jamison Lee all advances of every kind made by A. G. Floyd to the said Jamison Lee, and the said Jamison Lee hereby grants a lien on his part of the crop for all such advances. Each of the parties agree to furnish his proportion of the fertilizers used on said farm. The said Jamison Lee agrees to clean out all bottom ditches, clear off all rivers, creeks, branch and ditch banks of brush to water's edge, and to house A. G. Floyd's part of the crop. The said Jamison Lee further agrees not to hire out any of his hands during crop time, and it is the understanding between A. G. Floyd and Jamison Lee, that if this section of this contract is violated by him, said A. G. Floyd is to make a reduction from his part of the crop at the rate of $2 per day for each hand so hired. And it is further agreed, that if the cotton seed, corn or other seeds for planting purposes, be furnished by A. G. Floyd, then such seed is to be returned, bushel for bushel, or the value thereof, from the part of the said Jamison Lee. And it is further agreed, that Jamison Lee is not to use the mule furnished by A. G. Floyd for any other purpose except in the cultivation of the crop, and in going to and from market for supplies, and for milling purposes, and not to hire or loan the said mule to any person whatever, and it is the firm understanding between A. G. Floyd and Jamison Lee, that if the said Jamison Lee violated this section of this contract, the said Jamison Lee is to forfeit to the said A. G. Floyd one-third of his part of the crop, and to have the mule taken from his possession. And it is further agreed, that if Jamison Lee fails to cultivate or gather the crop in proper seasons, then A. G. Floyd may hire hands for that purpose, and deduct the amount paid for hands from his part of the crop. And it is further agreed, that when the said Jamison Lee leaves the place, he is to move no manures of any kind from the premises. And it is further agreed,

that the said Jamison Lee is to give possession at any time, after the 15th of December, that A. G. Floyd may require, and three days' notice will at any time be sufficient. Witness my hand and seal, this 3d day of April, 1895. Jamison [his X mark] Lee." Witness: H. H. Anderson.

The defendant in his testimony says that this instrument of writing embodies a previous verbal agreement which had been entered into between Jamison Lee and himself. In construing the above writing, his Honor, Judge Benet, said:

"I pronounce it a paper which created the relation of landlord and tenant between Floyd on the one hand, and Lee on the other, and did not create the relationship of master and servant, or employer and laborer. I do so for several reasons: for one, it provides that advances be made by Floyd to Lee, and provides for Lee giving a lien, which the law says a laborer cannotgive upon a crop. It also provides for his keeping the place in good repair, implying that he is put in control. He is to clean out all the bottom ditches, clear off all rivers, creeks, branch and ditch banks of brush to the water's edge. He is not being employed here as a ditcher, but that is what he is expected to do in control of the land. Then, also, another suggestive stipulation is that he, Lee, agrees not to hire out any of his hands. It is not usual for a laborer to have hands to hire, he may; one laborer may hire hands to do his work, but the intimation here, it strikes the Court, is that he was a tenant in the estimation of Floyd, requiring the assistance of hands to do the work of the farm. Then further on: 'It is further agreed that the said Jamison Lee is to give possession at any time after the 15th of December;' that implies clearly that he has been put into possession—of what? Put into possession of the land. A laborer is not put into possession of the land; only a tenant is put into possession of the land by a landlord. Then there is a fixed time at which he is to give possession, 15th of December, clearly intimating a lease for a fixed period, and it is not a question, as was argued to you, that he was put in possession of the land referred to in this con-

tract. How is it described here? 'a two-horse farm on A. G. Floyd's Walnut Grove place.' These are the leading reasons for my construction of this paper, and I charge you that it shows that Lee was put in possession of that land by Floyd as a tenant, and not as a laborer for hire. As such tenant he could give liens on the crop; as such tenant he could hire hands to do the work; as such tenant he could sub-rent or sublet parts of the land of which he was tenant, there being no stipulation in this paper forbidding him to rent out any part to any one else; and these various provisions, that I have indicated, are only consistent with the view that Lee was a tenant on A. G. Floyd's place, because they indicate such a transfer of the possession of land as is effected when a landlord puts a tenant in control of land." This Court agrees with the presiding Judge, that the relation that existed between Jamison Lee and A. G. Floyd was that of landlord and tenant. It is true, there are expressions appropriate to the creation of the relation of employer and laborer, but the real test is: Who had the right to the possession and control of the land for the period mentioned in the writing? This was in Jamison Lee. This exception is overruled.

We will next consider the first and second exceptions. The liens mentioned in these exceptions were introduced in evidence, for the purpose of showing that Lee was a tenant and not a laborer. Independently of such testimony, it has been shown that Lee was a tenant; so that even if there were error, it was harmless. These exceptions are overruled.

Subdivision "a" of the third exception will now be disposed of. Even admitting that there was a total failure to introduce such testimony, the defendant was not entitled to a nonsuit, because, although the plaintiff might not have shown that she was entitled to exemplary damages, there was testimony from which the jury had the right to find that she should recover a verdict for the value of the cotton.

We next proceed to a consideration of subdivision "b." The testimony shows that the defendant stopped the plaintiff from selling the cotton, and afterwards knowingly received the proceeds from the sale thereof. There was also testimony that the cotton was sold with the knowledge and under the direction of the defendant.

Subdivision "c" is disposed of by what was said in considering the fourth exception. The exceptions alleging error in refusing to charge the two requests to charge hereinbefore mentioned are also disposed of by what was said in considering the fourth exception.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.