HYLAND v. SOUTHERN BELL TELEPHONE AND TELE-
GRAPH CO.

1. EVIDENCE—OPINION.—After examination, a non-expert witness may say he thought a person was seriously hurt and knocked senseless.

2. IBID.—HEARSAY.—Admission of hearsay evidence is harmless, where the same evidence is brought out by competent witnesses.

3. EVIDENCE brought out according to suggestion of appellant's counsel and in his favor is not prejudicial.

4. IBID.—IF INCOMPETENT evidence is brought out without objection it becomes competent and the error is further cured by permitting other witnesses to testify to same fact.

5. IBID.—CUSTOM.—Witness who knows what is the custom may state incidents of its application.

6. IBID.—MORTALITY table established by statute (24 Stat., 96) is proper evidence as to expectancy of life in an action for injuries to a living person, where there is any evidence tending to show that the injuries are permanent.

7. EXCEPTION too indefinite.

8. MASTER AND SERVANT—TOOLS—APPLIANCES.—In this case, where the servant had contracted to furnish certain tools, it was proper under issue that the master had not furnished proper tools and appliances, to submit to jury the duty of the master in this regard, because the master did furnish a part of the tools and all appliances in nature of fellow-servants.

9. IBID.—RISKS.—Judge should not charge that servant assumed all risks incident to the business as conducted when employed, even if reasonable precautions had been neglected, because servant does not assume risk of negligence of master in conducting the work nor in selecting servants.

10. CHARGE.—Proposition of law upon which no fact deduced can remotely bear should not be charged.

Before Jos. A. McCULLOUGH, special J., Richland, October term, 1903. Affirmed.

Action by Philip H. Hyland against Southern Bell Telephone and Telegraph Co. From judgment for plaintiff, defendant appeals.

*Messrs. Nelson & Nelson* and *Hunt Chipley,* for appellant, cite: *As to the first three exceptions:* 59 S. C., 311. *Evidence as to custom is not sufficient to establish a rule of conduct:* 91 U. S., 469; 81 Am. Dec., 748; 28 S. W., 520; 10 So., 277; 14 So., 202; 17 Mich., 99; 14 L. R. A., 552; 83 Ia., 346; 87 Ga., 374; 108 Ill., 113; 67 Ia., 150; 175 Mass., 51; 53 Wis., 664; 40 S. E., 54. *Whether certain acts constitute such assumption as discharges defendant of liabiliy, is question of law:* 14 L. R. A., 51; 53 Wis., 664; 111 Pa., 343; 22 S. E., 869; 27 Minn., 367; 87 Mo., 550; 4 So. R., 333; 42 W. Va., 703; 96 N. C., 200. *If plaintiff failed to use ordinary care and precaution for his*

*own safety, he should not recover:* 61 S. C., 489; Beech. on
Con. Neg., 442; 20 Ency., 2 ed., 134; 26 S. E., 204; 103 Ga.,
584; 113 Ga., 1007; 55 L. R. A., 908.   *As to the assump-
tion of risks by the servant:* 39 S. C., 509; 18 S. C., 262,
275; 22 S. C., 557; 23 S. C., 529; 44 S. E., 992; 45 S. C.,
220; 34 So., 612; 68 N. E., 262; 34 So., 927; 72 Pac., 609;
Pierce on R. R., 379; 111 Ga., 427; 113 Ga., 276; 21 S. C.,
547; 27 S. C., 75.   *As to proper appliances:* 35 N. E., 456.
*Servant assumes risk of known negligence of master:* 59 L.
R. A., 516; 22 Am. & Eng. R. Cas., 907; 115 Ala., 193; 20
R. I., 386; 51 L. R. A., 513; 175 U. S., 323.

*Messrs. Thomas & Gibbes,* contra, cite: *Testimony admit-
ted without objection becomes competent:* 50 S. C., 240; 60
S. C., 271; 52 S. C., 377; 48 S. C., 337.   *Objection must be
made when offered:* 67 S. C., 169; 53 S. C., 160; 47 S. C.,
578; 60 S. C., 271; 57 S. C., 243; 56 S. C., 147; *and
grounds stated:* 59 S. C., 243; 53 S. C., 80; 60 S. C., 9;
62 S. C., 562; 66 S. C., 68.   *Grounds cannot appear first in
exception:* 46 S. C., 75; 53 S. C., 71; 46 S. C., 109; 63 S. C.,
569.   *Admission of irrelevant evidence is discretionary:* 54
S. C., 335; 63 S. C., 571; 65 S. C., 26; 52 S. C., 371; 51 S.
C., 480.   *Error in admitting incompetent evidence is cor-
rected by other competent evidence:* 53 S. C., 451; 54 S. C.,
293; 61 S. C., 304; 60 S. C., 9, 70; 53 S. C., 237; 48 S. C.,
240.   *When testimony as to usage and custom is admissible:*
27 Ency., 1 ed., 899-902; 21 Ency., 2 ed., 524; 61 S. C.,
488; 66 S. C., 353; 30 L. R. A., 814; 44 S. C., 442; 60 S. C.,
168.   *Mortality table, 24 Stat., 96, is competent here:* 20
Ency., 2 ed., 883; 118 U. S., 545.   *Appliances include
human instrumentalities:* 61 S. C., 468; 63 S. C., 569.   *That
servant, at time of employment, knew master's methods of
conducting his business were negligent, does not absolve
master from his legal duty to servant:* 170 U. S., 665; 66 S.
C., 485; 34 S. C., 215; 37 S. C., 654; 20 Ency., 55-57, 71,
73, 88, 123, 124.   *A request "to show negligence in defend-
ant, it must be made to appear, &.," is on the facts:* 61 S. C.,

563; 58 S. C., 288; 53 S. C., 450; 51 S. C., 458; 54 S. C.,
508; 41 S. C., 19; 61 S. C., 563.   *Contributory negligence
and assumption of risks becomes matter of law only when
evidence admits of one inference:* 18 S. C., 281; 48 S. C.,
364; 52 S. C., 438; 53 S. C., 358; 55 S. C., 90; 60 S. C., 9;
63 S. C., 559; 66 S. C., 482, 302.   *Servant is not guilty of
contributory negligence by remaining in employ of master
after knowledge of defect in machinery and appliances:* 18 S.
C., 281; 52 S. C., 438; 55 S. C., 100; 20 Ency., 120; 41 S.
C., 18.   *Whether servant assumes risk after knowledge of
defects in place, is matter for jury:* 61 S. C., 477; 126 N. C.,
359; 63 S. C., 575.

December 2, 1904.   The opinion of the Court was deliv-
ered by

MR. CHIEF JUSTICE POPE.   The following statement of
the action is made by the plaintiff, which we adopt as a
proper statement of the issues, thus presenting a copy of the
pleadings: "This is an action for the recovery of damages
for personal injuries sustained by the plaintiff, while in the
employment of the defendant, on the 20th day of March,
1902.   In the afternoon of the said day, the plaintiff, with
several other workmen, was engaged, under the direction of
a foreman, in erecting poles, stringing wires and doing other
work incident to the construction of a telephone line for the
defendant along the southern side of Gervais street, a public
highway much traveled by pedestrians, bicycles and vehicles,
near its intersection with Pine street, in the eastern suburbs
of the city of Columbia, about one square beyond the cor-
porate limits.   At this point a private telephone line had
been constructed along Pine street and across Gervais street,
and in order to facilitate the stringing of the wires of the
defendant's proposed line, the defendant's foreman had
caused the wires of the private line to be cut and lie across
Gervais street.   The wires of the defendant's proposed line
having been strung across Pine street, the foreman directed

the plaintiff, who was just then returning to his work from the city of Columbia, whither he had gone on an errand for the defendant, to reconnect the said wires of the private line across Gervais street. This the plaintiff undertook to do, and, with that end in view, had climbed the telephone pole, upon which the desired connection was directed to be made, to a height of about twenty-five feet above the ground, carrying one of the said wires coiled about his right arm and shoulder, when a bicyclist, approaching the city on his bicycle along Gervais street, ran against and became entangled with the said wire, causing the plaintiff to be precipitated from his position on the pole to the ground, with great force; whereby the plaintiff's collar-bone was broken, his shoulder and back wrenched, bruised and strained, and his person otherwise seriously injured. It is alleged in the complaint that the said injuries were caused by the negligence and recklessness of the defendant, 'in failing to provide and put in charge of the work of constructing said line, with plaintiff, careful and competent workmen, and in providing and putting in charge of the work, careless, ignorant and incompetent workmen, and in failing to furnish safe, suitable and proper tackle, tools, implements and appliances to raise, or enable plaintiff to raise said wire to said pole, and in requiring plaintiff to carry said wire up said pole as aforesaid with the end thereof looped about his arm and shoulder, and in requiring plaintiff to raise and attach said wire in the manner aforesaid while the slack thereof lay upon and was suspended over said Gervais street, in imminent peril to plaintiff and to passengers along said street; and in failing to take proper precautions or keep a proper lookout to prevent such passengers from colliding with said wire, and in causing and permitting said bicycle and its rider to run into and become entangled with said wire as aforesaid.'

"The answer, for a first defense, denies the negligence, recklessness and extent of injuries as alleged; and for a second defense, avers that the alleged accident and injuries

to the plaintiff were caused by his contributory negligence in not exercising due care and caution, and if there was any risk connected with the work in which plaintiff was engaged at the time of his alleged injuries, he, the plaintiff, voluntarily assumed the same.' "

Upon these issues the action was tried before special Judge, Joseph A. McCollough, and a jury, at the fall term of the Court of Common Pleas of Richland County, at Columbia, S. C., and resulted in a verdict for the plaintiff.

"After entry of judgment upon said verdict, the defendant appealed to this Court upon the following grounds, to wit:

"1. Because, against the objection of defendant, his Honor admitted in evidence the statement of the witness, Hiller L. Leadford, in the words: 'He (the plaintiff) seemed to be very seriously hurt, was knocked senseless, and I understood had his collar-bone broken and was otherwise injured'—such statement being incompetent because, (1) it embodied a mere opinion of a non-expert witness, and (2) it was hearsay.

"2. Because, against the objection of defendant, his Honor admitted in evidence the statement of the witness, Philip H. Hyland, in the words: 'I took them (the defendant's employees) to be experienced men, that is, for all-round workmen'—such statement being incompetent, because it embodied a mere opinion of a non-expert witness.

"3. Because, against the objection of defendant, his Honor admitted in evidence the statement of the witness, Philip H. Hyland, in the words: 'The practice is to leave a man on the crossing and to guard them, to lookout for wagons and whatever may be the traffic'—such statement presenting to the jury a practice or custom as a rule of conduct in a matter in which, according to law, the practice or custom raises no rule of conduct.

"4. Because, against the objection of defendant, his Honor admitted in evidence the statement of the witness, Wm. Perry, in the words: 'It is the custom when wires block

either the street or sidewalk to have somebody there to notify people coming along, either pedestrians or vehicles'—such statement presenting to the jury a practice or custom as a rule of conduct in a matter in which, according to law, the practice or custom raises no rule of conduct.

"5. Because, against the objection of defendant, his Honor admitted in evidence the statement of the witness, Wm. Perry, in the words: 'I have noticed other people and vehicles being stopped on account of wires across the street— have been stopped myself'—such statement constituting no evidence competent to establish practice or custom.

"6. Because, against the objection of defendant, his Honor admitted in evidence the mortuary table passed by the General Assembly of South Carolina (24 Stats., 96)—such table being incompetent in a case where the wrong complained of did not result in the death or total disability of the party injured.

"7. Because, against the objection of defendant, his Honor admitted in evidence the opinion of the witness, R. H. Smith, as to the duty of the defendant's foreman in a given case—such opinion being incompetent, because (1) it related to a matter in which opinion evidence is not competent; (2) and witness gave no reason for his opinion; and (3) it purported to establish the relations of parties to a contract to which the witness was a stranger and of which he had no knowledge.

"8. That his Honor charged that the master must furnish the servant with appropriate and suitable tools and appliances—such unqualified statement being erroneous in its application to this case, for the reason that the undisputed proof on the trial was that the plaintiff had contracted with the defendant to furnish himself the tools and appliances needed in the work in which he was, when injured, engaged, as an employee of the defendant.

"9. For that his Honor submitted to the jury the question: 'Did the master discharge that duty in furnishing safe,

21—70.

suitable, appropriate appliances?' the undisputed proof on the trial being that the plaintiff had contracted with the defendant to furnish himself the tools and appliances needed in the work in which he was, when injured, engaged as an employee of the defendant.

"10. For that his Honor refused to charge that 'a servant having consented to serve in the way and manner in which the business was being conducted, has no ground of complaint, even if reasonable precautions have been neglected, and will be deemed to have assumed all risks naturally and reasonably incident to his employment, and to have notice of all risks which to a person of his experience and understanding are, or ought to be, obvious'—the proposition thus rejected being correct in law and applicable to the issues' herein.

"11. For that his Honor refused to charge that 'to show negligence in the defendant, it must be made to appear that the danger was such that the plaintiff could not be presumed to know it, and that the defendant did not give him information of it; if he knew and appreciated the danger, he cannot recover'—the proposition thus rejected being correct in law and applicable to the issues herein.

"12. For that his Honor refused to charge that 'if the place is obviously unsafe, so as to charge the servant with knowledge thereof, and he nevertheless enters upon the work, he assumes the risk; as a general rule, if the servant injured knows that the force for work is insufficient, he will be held to have assumed the risk, and waived the obligation of the company in this respect as to himself, and if injured by means of such delinquency he is without remedy'—the propositions thus rejected being correct in law, and applicable to the issues herein."

We will now consider defendant's ground of appeal and will adopt the grouping of these exceptions. We will, therefore, divide the exceptions into two or three classes, viz: One to seven inclusive, relating to alleged errors of the Circuit

Judge in relation to the admission of testimony; second, eight and nine, relating to alleged errors in the Circuit Judge's charge to the jury; and third, tenth, eleventh and twelfth exceptions, relating to alleged errors of the Circuit Judge in refusing to charge certain requests to charge.

1. (a) Objection to Hiller L. Leadfords' testimony. We do not attach much attention to this allegation of error. The witness saw plaintiff immediately after his fall. He examined him and found him in a senseless condition. So far, no error. The witness thought him seriously hurt. No objection to this. He heard that plaintiff's collar-bone was broken and was otherwise injured. This was hearsay. But no harm resulted to the defendant therefrom. Dr. R. A. Gibbes, an expert, told the same facts in his testimony, and the plaintiff explained his injuries in his testimony. *Garrick* v. *R. R. Co.,* 53 S. C., 451, 31 S. E., 334; *Rakestraw* v. *Floyd,* 54 S. C., 293, 32 S. E., 419; *Perry* v. *Jeffries,* 61 S. C., 304, 39 S. E., 575; *Watts* v. *R. R. Co.,* 60 S. C., 70, 38 S. E., 240; *Mathis* v. *R. R. Co.,* 53 S. C., 246, 31 S. E., 240; *Youngblood* v. *R. R. Co.,* 60 S. C., 9, 38 S. E., 232, and *Smith* v. *Brabham,* 48 S. C., 340, 26 S. E., 651.

(b) Objection to testimony of plaintiff for the reason that he testified that he took his fellow-workmen to be experienced men, that is, for all-round workmen—"such statements being incompetent because it embodied a mere opinion of a non-expert witness." Now, here is what occurred when the witness testified: "Can you tell the jury whether they (the hands) were old, experienced men or whether new hands? Mr. Nelson: We object. He says he does not know how long they were at work. He can testify as to whether they did work in a workmanlike manner and as men of experience." "The Court: He can tell whether he worked as an experienced man." "Answer: I took them to be experienced men, that is, for all-round workmen." Nothing was said by defendant's attorneys after this

answer. Other testimony of a similar character was given by defendant's witnesses. We see no objection to this examination of the witness; it was caused by the suggestion of Mr. Nelson, and was in favor of his client, the defendant.

(c) So far as this ground of appeal is concerned, we cannot support it, because Hyland testified that it was the practice and custom to leave a man on the crossing to guard them, to look out for wagons and whatever may be the traffic. No objection was taken as to this testimony. It was thus made competent in this case. On pages 9 and 10, the whole matter is made clear, besides other witnesses testified as to this custom. See, also, 2 Ency. of Law, pages 899 to 902; 21 Ency. of Law (2d ed.), at page 524. Our own case of *Bodie* v. *R. R.*, 61 S. C., 488, 39 S. E., 715, and 66 S. C., 303, 44 S. E., 943, seems to be conclusive.

(d) The objection to the testimony of Wm. Perry is of a kindred nature. This witness testified that he knew the custom, and no objection was taken. This ground of appeal is untenable.

(e) The objection here raised as to the testimony of witness Wm. Perry, is to the same effect as that to which we have already ruled. The question was competent.

(f) This objection relates to the competency of the mortuary table provided by the General Assembly of this State (24 Stat. at Large, 96). It was objected to on the ground that this act only related to cases where there was loss of life and not applicable where the person injured is still living. By the express language of the statute it is admissible in all cases in which "it shall be necessary to establish the expectancy of continued life of any person from any period of such person's life, *whether he be living at the time or not*" (italics ours). In 20 Ency. of Law (2d ed.), at page 883, this language is used: "Mortality tables are admissible in evidence whenever the probable dura-

tion of a person's life is a material issue in a case.    Thus in actions for personal injuries, when the injury is of a permanent character, and in actions for death by wrongful act, in estimating damages, the expectancy of life of the person injured is an essential element, and to show such expectancy, standard mortality tables are admissible in evidence."

The United States Supreme Court, in *Vicksburg Railroad Company* v. *Putnam*, 118 U. S., 545, 555, held: "In the present case it was not suggested by the defendant at the trial that the life tables admitted in evidence were not standard tables or not duly authenticated.    The only ground assigned for the objection to their competency was that 'the plaintiff has not shown a case in which such evidence is admissible, the plaintiff not having been killed or permanently disabled.'    It is a sufficient answer to this objection that there was evidence from which the jury might conclude that the plaintiff's disability was permanent."    We overrule this ground of appeal.

(g) This exception is too indefinite.    "In a given case"—what case is given or meant.    It is, therefore, overruled.

2. Exceptions 8 and 9 relate to alleged errors in Judge's charge—8 refers to the charge of his Honor touching the duty of the master in supplying the servants with appropriate tools and appliances.    It was only in proof here that the servant was required himself to possess certain tools, not, however, "hand ropes" or appliances.    In the two cases—*Bodie* v. *R. R. Co., supra,* and *Hicks* v. *R. R. Co.,* 63 S. C., 569, 41 S. E., 753—it has been held that tools and *appliances,* so far as appliances are concerned, embrace or include *human instrumentalities* as well as mechanical devices.    The duty of the master to the servant is elementary law.    We cannot, therefore, sustain the eighth exception.

9. Exception, from the foregoing views, is untenable; for under the issues here raised, it was the duty of the Circuit

Judge to submit this question to the jury: "Did the master discharge that duty in furnishing safe, suitable, appropriate appliances?" See our views expressed under eighth ground of appeal. It is overruled.

3. This division refers to tenth, eleventh and twelfth grounds of appeal.

"10. A servant having consented to serve in the way and manner in which the business was being conducted, has no ground of complaint, even if reasonable precautions have been neglected, and will be deemed to have assumed all risks naturally and reasonably incident to his employment, and to have notice of all risks, which to a person of his experience and understanding are, or ought to be, obvious." Judge said: "I can't charge you that way, because it is a question for you to determine under the charge as I have given you, whether or not the risk was assumed under the particular circumstances of the case." Now, what had the presiding Judge said to the jury: "There is another defense. The telephone company says you assumed this risk. What does that mean? That means, when the servant enters the employment of the master, there are certain risks necessarily incident to that employment, certain hazards he must necessarily run. The law says he assumes those risks, and it says furthermore, if there are patent, glaring hazards, obvious dangers, and the servant enters upon the employment of the master with knowledge of these hazards, knowledge of these dangers, and continues in his employment, the jury may say, under these facts, that the servant, while he may not have expressly agreed to do so, but by his conduct tacitly agreed to relieve the master of the consequences of the defects. In other words, the question of waiver, the question of assumption, that the servant has assumed these risks. 'I knew of these dangers, I knew of these defects, I by my conduct agreed to assume the dangers necessarily incident to this employment.' If he does that, he cannot complain; it is an assumption of risk. The telephone

company says you are injured by the negligence of a fellow-servant, and I did not agree to guarantee you against the result of the negligence of a fellow-servant. What does that mean? It means this: Here are two men engaged in an ordinary avocation of duty under charge of a superior. Now these two men, when they are thus engaged, are fellow-servants; and common sense comes in there. One of these servants knows that the master is not responsible for the act of negligence of a fellow-servant, if the master has exercised due care in the employment of the fellow-servant, if he has discharged his duty there, then the negligence of the fellow-servant, if it result in injury to the other servant the master is not chargeable with. But, gentlemen, that 'fellow-servant' means one servant does not assume the risk of another servant if not engaged in the business for which he was employed, neither is he responsible for it, neither is he responsible for the negligence of the person who represents the master, the man who has the right to control and direct the services of the injured party; in other words, that person, like a centurion, says to this man, 'Go, and he goeth;' 'Come, and he cometh;' 'Do this, and he doeth it;' if such person had that kind of authority, his negligence—the servant does not assume the consequences of his negligence." It seems to us the Circuit Judge made no mistake in his charge. This exception is overruled.

11. The Circuit Judge in his charge to the jury correctly laid down the law as referred to in this exception, and it is, therefore, overruled.

"12. For that his Honor refused to charge that, if the place is obviously unsafe, so as to charge the servant with knowledge thereof, and he nevertheless enters upon the work, he assumes the risk; as a general rule, if the servant injured knows that the force for work is insufficient, he will be held to have assumed the risk, and waived the obligation of the company in this respect as to himself, and if injured by means of such delinquency, he

is without remedy." There is no necessity to consider this exception at any length, for there are no facts developed in the testimony which bear even remotely upon this proposition of law. If there is no testimony supporting this proposition of law, the Circuit Judge had no business making any such charge. The issues in this action are clear cut, but amongst those issues the one now referred to does not appear. This ground of appeal is overruled.

It is the judgment of this Court, that the judgment of the Circuit Court is affirmed.