COLUMBIA RY., GAS & ELECTRIC CO. v. JONES *ET AL.*, TAX COMMISSION

(112 S. E. 267)

1. LANDLORD AND TENANT—"TENANT" OCCUPIES IN SUBORDINATION TO LANDLORD'S TITLE.—A "tenant" is one who occupies premises of another in subordination to that other's title and with his assent, express or implied.

2. LANDLORD AND TENANT—LEASE MAY BE OF INDEFINITE LENGTH.— In absence of legal inhibition, a lease may be made for any length of time the parties elect.

3. LANDLORD AND TENANT—OCCUPATION UNDER INVALID LEASE CREATES RELATION.—Entry and occupation under an invalid or defective lease will create the relation of landlord and tenant.

4. LANDLORD AND TENANT—OPERATING AGREEMENT BETWEEN TRACTION AND POWER COMPANIES CREATED RELATION.—In view of Civ. Code 1912, § 2881, permitting an electric company to lease its properties and franchise, an "operating agreement" between a traction company and a power company providing for the delivery of possession to the traction company of the power development with plant and equipment for the use and management thereof by the traction company in perpetuity or until agreement terminated and for the payment by the traction company for the power company of certain charges such as taxes assessed, etc., and giving the power company the right to inspect its property, to maintain separate corporate existence, and for termination of the agreement, and restoring to the power company possession upon default, and a lien on the power company's property, *held* to effect an alienation of the property of the power company and vest an estate in the traction company not less than a leasehold and to create the relationship of landlord and tenant.

5. LICENSES—LESSEE OF POWER COMPANY LIABLE FOR LICENSE FEE ON "GROSS INCOME" FROM SALE OF POWER.—The measure of the license fee imposed by 1 Civ. Code 1912, § 369, is volume of business or "gross income for business done," "gross income" meaning the total receipts from a business before deducting expenditures for

any purpose, and a traction and power company was liable for the payment of a license fee upon the gross receipts of its business, including rent or money paid to a power company whose plant it was operating under an agreement creating the relation of landlord and tenant.

6. LICENSES—LESSEE PAYING PART OF GROSS INCOME AS RENT NOT ENTITLED TO PRORATE LICENSE FEE ON NET AMOUNT.—By Civ. Code 1912, § 361, a public service corporation is required to make annual reports of gross earnings, and, notwithstanding subdivision 18, requiring a traction company to report business done within the State for the year then preceding, "including the company's proportion of gross receipts for business done by it within the State in connection with other companies," a lessee's proportion of gross earnings for business done in connection with another is not the proportion left after paying the lessor's rent.

7. LICENSES—RIGHT OF ADJUSTMENT BY LESSEE FOR OVERPAYMENT OF LICENSE TAX FOR LESSOR IS AGAINST LESSOR, NOT STATE.—Where a traction company leasing property of a power company paid out more on account of license taxes for the power company than it was obligated to pay, its right to adjustment and reimbursement was against the power company and not against the State.

8. LICENSES—NO ACTION TO RECOVER MONEY PAID OUT WITH KNOWLEDGE OF FACTS.—Where payment of license taxes was voluntarily made with full knowledge of the facts, no action could be maintained to recover.

Before TOWNSEND, J., Richland.    September, 1921. Affirmed.

Action by Columbia Railway, Gas & Electric Co. against A. W. Jones, et al. S. C. Tax Commission to enjoin the imposition and collection of a tax. Decree for defendants and plaintiff appeals.

*Mr. J. B. S. Lyles,* for appellant, cites: *Presumption against double taxation*: 15 Rich. L. 66; 47 Am. Rep. 202; Endlich Inter. Stats. 478, Sec. 345. *"Gross Receipts"*: 120 N. W. 534; 15 Rich. L. 66; 61 N. E. 94; 70 N. E. 10; 97 N. W. 1063; 43 N. W. 840; 107 S. W. 802. *Agreement authorized*: 1 Civ. Code 1912, Sec. 2881. *Court cannot strike out reference in Act and insert another*: 62 S. C. 57; 99 S. C. 218. *Competition in public utilities is not encouraged*: P. U. R. 1918A, 113; P. U. R.

1918B, 535; P. U. R. 1918C, 193; P. U. R. 1918C, 903; P. U. R. 1918C, 915.

*Mr. J. Fraser Lyon,* for respondents, cites: *Gross receipts" taxable:* 97 Atl. 857; 106 N. E. 1040; L. Civ. Code 1912, Sec. 361, Subd. 13.

April 11, 1922.

The opinion of the Court was delivered by MR. JUSTICE MARION.

Action was brought in the Circuit Court by the Columbia Railway, Gas & Electric Company to enjoin defendants as the duly constituted authorities of the State from collecting a tax assessed against said plaintiff under and by virtue of the provisions of Section 369, Vol. I, Code of 1912, imposing an annual license fee of "three mills on the gross income" of the public service corporations therein named. The appeal is from the Circuit decree of Judge W. H. Townsend holding that the tax or fees claimed by the State were properly assessed, that the amount claimed was due and collectable, and that the plaintiff company was not entitled to the injunction relief sought.

The facts revelant to a determination of the questions, raised are as follows: The plaintiff-appellant, the Columbia Railway, Gas & Electric Company, hereinafter referred to as the Columbia Company, is a domestic corporation, chartered for the purpose of carrying on the business of a "street railway company," of a "light company" and of a "power company," with the usual powers appropriate to that purpose, including the power of eminent domain (17 Stat. 876; 19 Stat. 1103; 20 Stat. 969; 27 Stat. 1139; 28 Stat. 401 Section 3326; Vol. I. Code 1912). The Parr Shoals Power Company, hereinafter referred to as the power company, is a domestic corporation, with power of eminent domain, created for the purpose of developing, transmitting, and selling electric power, etc., and bound by the terms of

its charter to furnish power to any person or corporation
on demand at the usual rates or charges.   24 Stat. 1032.
The Columbia Company is the owner of the street rail-
way system of the City of Columbia, of a hydro-electric
power plant on the Columbia Canal, of a steam plant for gen-
erating electric power, and of transmission lines in said
city and vicinity, and was during the period here involved
engaged in furnishing and selling electric light and power
and street railway service to the general public of Colum-
bia and vicinity.   The power company is the owner of
a dam, water rights, and hydro-electric plant on Broad
River and of lines for transmitting electric current which
connect with the transmission lines of the Columbia Com-
pany near the City of Columbia.   During the years 1915-
1919, which is the period of time involved in this con-
troversy, the power company was operated by the Co-
lumbia Company under the terms of an instrument called
an "operating agreement."   This agreement, dated August
12, 1912, was entered into prior to the development of
the power company's water power on Broad River, and its
execution appears to have been an essential step in the
promotion and financing of the power company.   It re-
cites that the power company is the owner of hydro-
electric properties on Broad River in the Counties of Lex-
ington, Newberry, and Fairfield, the development of which
has been undertaken, and that the Columbia Company as
the owner and operator of street railways and electric
power plants in Columbia and vicinity requires for the
needs of its business a large and permanent supply of ad-
ditional power, which it desires to secure by the operation
of the power company's proposed development.

The articles of this agreement, as numbered in the case
and as fully abstracted as the contentions of parties would
seem to require, are as follows: First.   That upon com-
pletion of the power development the power company shall

deliver same to the Columbia Company for operation, and the Columbia Company shall operate same for the power company in perpetuity or until the agreement is terminated as provided in article twelfth. All earnings, income, and profits derived from the power development shall "be applied, so far as necessary, to the payment specified in article third of this agreement and any surplus after making such payments, but not before, shall belong to the Columbia Company absolutely." "Such earnings, income and profits (except such surplus) shall be kept separate from those of the Columbia Company, which shall maintain with respect thereto separate and complete accounts." Third, the Columbia Company, so long as it shall remain in possession of the power development, shall pay (a) all expenses of operating the power development, including maintenance; (b) all taxes, assessments and governmental charges of the power company; (c) interests "as same matures," upon the bonds and other indebtedness of the power company and sinking fund payments upon the power company's mortgage; (d) expenses of maintaining the separate existence and organization of the power company, etc.; (e) quarterly dividends upon certain preferred stock of the power company. If the income from the operation of the power development shall be insufficient to provide for such payments, the Columbia Company "shall nevertheless make such payments," and no liability shall attach to the power company to repay any amounts so paid by the Columbia Company. Fifth. The Columbia Company shall maintain the property of the power company in good repair and shall make such betterments and improvements as it may determine to be for the best interest of the power company, etc. Eighth. Power company by its officers shall be entitled to enter upon and inspect its property, to examine books of Columbia Company, etc., and Columbia Company shall furnish to or for the power company all reports and statements

which the power company may be required by law to make, etc. Tenth. The power company shall maintain its separate corporate existence and organization, etc. Twelfth. If default shall be made by the Columbia Company in, payment of any of the sums of money payable under article third, and if certain other contingencies named shall arise, then the power company may by written notice terminate the agreement and resume possession and control of its property. Fourteenth. This agreement shall be a lien upon the power company's property, and the covenants and conditions thereof shall run with the real estate, etc. Sixteenth. Power company shall cause the agreement to be recorded in the counties where property is located.

Having entered into possession and control of the power company's property under the terms of said agreement, all of the power generated by power company's plant, except a small proportion thereof delivered to Winnsboro, S. C., was transmitted over the power company's lines to connecting lines of the Columbia Company, and thence carried into a terminal station on the banks of the Columbia Canal, where it was mingled with the electric current or power produced by the Columbia Company from its canal development and from its steam plant. From this common reservoir the Columbia Company distributed the power over its own transmission lines, using a part thereof to operate its street railways and delivering the remainder to its light and power customers. All contracts in relation to public service were made by the Columbia Company, and all tolls, charges, and income were collected by the Columbia Company and as common corporate funds turned into its treasury. The separate accounts kept by the Columbia Company covering the operation of the power company under the agreement seems to have consisted substantially of a debt and credit sheet upon which the power company in account with the Columbia Company was charged with the payments made by the Columbia Company under article third of the agreement, and

486    Cola. Ry., Etc. Co. v. Tax Commission

Opinion of the Court    [119 S. C.

the power company credited with the electric power furnished by it on the basis of a price arrived at by measuring the K. W. hours and allowing therefor a sliding rate of compensation fixed by the Columbia Company. The actual cost of generating power was not calculated separately as to the source contributing to the common supply of the Columbia Company. On the books of the Columbia Company an item was entered as "power purchased," being the amount allowed the power company for the power furnished by it at the rate fixed by the Columbia Company.

For the years 1915-1919, inclusive, the Columbia Company prepared and filed with the Tax Commission the reports of the power company showing as the gross income of the power company the amounts annually allowed and credited to the power company for power at the book price fixed aggregating the sum of $1,436,031. Indorsed upon the reports was the notation, "In connection with the return of Columbia Railway, Gas & Electric Company Power Dept." Upon the amounts entering into said aggregate sum the power company has annually paid the 3-mill tax or license fee. But the Columbia Company during said period in making and filing its own reports deduced from or did not include in its gross income the amount so paid over or credited to the power company. It also failed to return as income of either the power company or the Columbia Company the sum of $123,074 received from the Winnsboro contracts of the power company and from miscellaneous earnings, upon which amount the appellant concedes that it is liable for the 3-mill tax. It further appears that the sum of $1,436,031, collected by the Columbia Company and credited to the power company, and upon which the 3-mill tax has been paid by the power company, exceeded the amount the Columbia Company was due the power company under the operating agreement by the sum of $134,784, which amount in fact represents the book surplus or profit of the Columbia Company from the operation of the power company's property.

The contentions embraced within the position of the State are: (1) That the Columbia Company and the power company are separate and distinct domestic corporations and that each is subject to the 3-mill license tax on gross income; (2) that the $1,436,031 credited to the power company and not included in the gross receipts or gross income of the Columbia Company for the years in question was collected as and constituted a part of the taxable gross income of the Columbia Company; and (3) that the Columbia Company is not entitled to a refund of or credit for any overpayment of license fees voluntarily made by the power company on account of the alleged erroneous inclusion of $134,784 in the gross income of the power company which should have been allocated to the Columbia Company as surplus under the operating agreement. The position of the State was sustained by the Court below, which held that the relation of the Columbia Company to the power company with respect to the power derived from the power company's plant was that of purchaser. The contentions of the appellant, embraced within the exceptions, and earnestly and forcefully presented to this Court, are: (1) That of the amount in controversy, $1,436.031, the sum of $1,301,246 was received by the Columbia Company as agent or trustee for the power company under the terms of the operating agreement and formed no part of its gross income within the meaning of the statute; (2) that even if that be not conceded, the sum of $1,436,031 was gross receipts of the Columbia Company from business done within the State in connection with the power company within the meaning of Subdivision 13 of Section 361, Vol. 1, Code 1912, for which the Columbia Company would only be liable upon the sum of $134,784, the surplus to it accruing under the operating agreement, as its proportion of joint taxable receipts; and (3) that, the said sum of $134,784 having been erroneously

allocated to the power company as a part of its gross receipts and the tax paid thereon by the power company upon returns of each company indorsed as made in connection with the other, the Columbia Company should in any event be allowed credit pro tanto for the tax so erroneously paid by the power company and should not be required to pay the same tax twice on the same receipts.

It is apparent that the burden of appellant's contentions taken together rests upon the theory that the relation of the appellant, the Columbia Company, to the power company in the business operation of the two companies, was that merely of an agent or trustee handling a consigned commodity and collecting moneys impressed with a trust for the benefit of another, which receipts under the authority of the case of *Southern Express Co. v. Hood,* 15 Rich. 66, 94 Am. Dec. 141, constituted no part of its taxable gross income. Since it has been strongly urged that the facts of the case at bar bring it clearly within the rule or principle announced and applied in *Express Co. v. Hood,* it becomes necessary to determine the metes and bounds of that decision. In that case the Court had under consideration an income tax statute imposing a tax on gross incomes, measured in the case of express companies, by the "gross amount of the receipts." The express company claimed that in its gross receipts within the State of South Carolina there were included the shares or portions of the freight and charges accruing to its connecting companies, where articles were transported to or from beyond the limits of its own business; such freight charges being paid in advance or on delivery of freight to the consignee or consignees by the express company. Further, that a large part of its "gross receipts consisted of receipts for the freights and charges of transportation of railroads and steamboats, the usual and ordinary common carriers of the country," received by it and paid and disbursed to said common carriers. The Court

held that "the gross receipts are such as the Southern Express Company receive for themselves and not as agent for others," and reached the conclusion that under the facts of that case receipts of the classes indicated fell within the principle announced. The authority of that decision is not to be extended beyond the precise point there adjudicated, viz., that charges for a joint or connected service accruing to and belonging to other common carriers collected in the course of its own business by another common carrier as agent for the others do not constitute a part of the "gross receipts" of the company collecting such moneys as agent. But accepting for the purposes of this discussion the principle there announced in its broadest signification—that moneys collected as agent are not a part of the gross receipts of the agent's business—was the sum of $1,436,031, here in controversy, collected by the Columbia Company's as agent or trustee for the power company?

We concur in the view of appellant that the legal relationship of the two companies is to be determined from the terms and provisions of the operating agreement and that such relationship was not that of seller and purchaser as held by the Circuit Court. There is nothing in the contract expressly or impliedly obligating the Columbia Company to buy, or the power company to sell, its product at a price. So long as the Columbia Company should meet the payments and conditions "nominated in the bond," it could take and do as it pleased with the power company's current. Keeping a charge account of the power obtained at a purely arbitrary price was merely a bookkeeping method of checking the power company's production for the information and convenience of the Columbia Company. On the other hand, examination of the provisions of the operating agreement hereinabove abstracted will as clearly disclose that the controlling relationship was not that of principal and agent nor that of trustee and cestui que trust. The

contract provides: (1) For the delivery of absolute transfer of possession to the Columbia Company of the power development, consisting of real estate, incorporeal hereditaments, and hydro-electric plant and equipment; (2) for the exclusive use, occupation, control, and management thereof by the Columbia Company for and on behalf of the power company in perpetuity or until the agreement is terminated; (3) for the payment by the Columbia Company for and on behalf of the power company of certain charges, such as all taxes assessed against the power company, interest as it matures on the bonds, and dividends on stock, irrespective of returns 'to the Columbia Company from operation of the power company; (4) for the right of the power company at reasonable times to enter upon and inspect its property and for the maintenance by it of separate corporate existence and organization; (5) for termination of the agreement and restoration to the power company of the possession and control of its property upon default by the Columbia Company in making the payments stipulated, etc.; (6) that the agreement shall constitute a lien on the power company's property, that its covenants shall run with the land, and that it shall be recorded in all counties where the property of the power company is situated.

1-3    That this contract effects an alienation of the property of the power company and vests in the Columbia Company an estate which is not less than a leasehold is clear beyond question. A tenant has been defined to be one who occupies the lands or premises of another in subordination to that other's title, and with his assent, express or implied." 16 R. C. L. p. 531; *Alexander v. Gardner,* 123 Ky. 552, 96 S. W. 818, 124 Am. St. Rep. 378; *Hawkins v. Tanner,* 129 Ga. 497, 59 S. E. 225; 16 Am. & Eng. Enc. L. (26th Ed.) 164, 165; Wood on Landlord and Tenant, §1. The agreement embodies all the essential elements of a lease. There is (a) a grant of the possession and of the exclusive

use and enjoyment of the power company's property (b) for a definite consideration or rental which is susceptible of being made certain, and (c) for a definitely expressed and certain term, which term is "in perpetuity" or until the agreement is terminated by default. *Wilcox v. Bostick,* 57 S. C. 151, 35 S. E. 496; *Rakestraw v. Floyd,* 54 S. C. 288, 32 S. E. 419. In the absence of constitutional or statutory inhibition a lease may be made for any length of time the parties may select. 16 R. C. L., p. 608, § 88; 18 Am. & Eng. Ency. L. (2nd Ed.) 611. But upon the sufficiency of the agreement as a technical lease it is unnecessary to pass. If invalid as a technical lease on account of uncertainty as to duration of term (16 R. C. L. 606, § 86; *State v. Page,* 1 Speers, 408, 40 Am. Dec. 608), the authorities agree that entry and occupation under an invalid or defective lease will create the relation of the landlord and tenant (16 R. C. L., pp. 574, 575; 34 L. R. A. [N. S.] note 1069). If the agreement to deliver the possession and control of its property by the power company "in perpetuity" subject to the happening of certain contingencies be construed as the conveyance of a base or defeasible fee (*Penick v. Atkinson,* 139 Ga. 649, 77 S. E. 1055, 46 L. R. A. (N. S.) 284 and cases cited in note, Ann. Cas. 1914B, 842), the effect certainly would not be to transform the character of the Columbia Company's holding into that of an agent for his principal. The provisions in the operating agreement that the Columbia Company shall operate the power development "for the power company," and that "all earnings, income and profits derived from the power development, etc., shall be applied, so far as necessary, to the payments specified in article third, and any surplus after making such payments, but not before, shall belong to the Columbia Company absolutely," cannot be constructed as such a delimitation of the Columbia Company's interest or estate in the premises as will make the agreement a mere contract of employment or agency. Farms and in-

dustrial plants are commonly leased to tenants to be operated, expressly or impliedly, for the landlord, and rent is frequently reserved out of or designated as a portion of the proceeds or profits. *Rakestraw v. Floyd,* 54 S. C. 288, 32 S. E. 419; *Whaley v. Jacobson,* 21 S. C. 51; *Charles v. Byrd,* 29 S. C., 544; 8 S. E., 1; *State ex rel. Greaves v. Henry,* 87 Miss. 125, 40 South. 152, 5 L. R. A. (N. S.) 340; *Hawley v. Curry,* 74 Ill. App. 309; *Ault Woodenware Co. v. Baker,* 26 Ind. App. 374, 58 N. E. 265; 16 R. C. L. p. 519, § 53.

The case at bar is so readily distinguished from that of *State v. Page,* 1 Speers, 408, where an agreement for the keeping of a hotel for a term of years, providing that the defendant was to have possession to "manage and conduct" for the hotel company, was construed to be a contract of agency and not a lease, that no extended comment upon the essential points of difference is required. There was not, under the terms of the contract as there construed, exclusive possession and control in the manager, nor covenant for payment of rent; on the contrary there was a stipulation for the payment to the manager of a minimum sum as compensation regardless of the profits of the operation. But it is of interest to note that this contract seems to have been construed by the Court of equity as a lease. *City Council v. Page,* Speers, Eq. 159. The provision of the operating agreement obligating the Columbia Company to apply earnings and profits to the payment of the charges assumed is followed by a covenant in article third to pay those charges whether the income derived from the operation of the power company be sufficient therefor or not without "liability upon the power company to repay any amount so paid." It is a clear-cut covenant to pay what is substantially a fixed rent. Neither can an independent relationship of principal and agent be implied and superimposed upon the

parties from the language of the operating agreement above quoted. The effect of the provision that the Columbia Company shall apply income and profits from the power company to the payments assumed "so far as may be necessary," and that only the surplus "shall belong to the Columbia Company," is merely to recognize by implication title of the power company in and to said earnings and income to the extent of the rent received and to give the power company as against the Columbia Company the right—a right derived from and dependent upon the relation of landlord and tenant—to assert a lien (17 R. C. L., p. 596, § 2) upon such earnings and profits to secure payment of rent. From the terms of the operating agreement itself, therefore, we have no hesitation in reaching the conclusion that the relationship of the Columbia Company and the power company was that of landlord and tenant and that the operating agreement is, to all intents and purposes here involved, a lease.

That conclusion is reinforced by the additional consideration that it is only by way of "lease" under express statutory authority that the Columbia Company could lawfully take over and the power company transfer the possession, control and operation of the property and business of the power company. Unless specially authorized by its charter or aided by some other legislative action, a public service corporation cannot by contract turn over to another company for a long period of time its property and appurtenances, the use of its franchises, and the exercise of its powers; nor can any other public service corporation without similar authority make a contract to receive and operate such property and franchises of the first corporation. *Penn R. R. Co. v. St. Louis, etc., R. R. Co.,* 118 U. S. at page 309; 6 Sup. Ct. 1094; 30 L. Ed., 92; *Smalley v. Railway,* 73 S. C. 572, 53 S. E. 1000, 6 Ann. Cas. 868; *Brunswick G. L. Co. v. United Gas, etc., Co.,* 85 Me., 532; 27 Atl., 525; 35 Am. St. Rep. 385, and note thereto; 14 A. C. J., p. 543. The

statutory sanction essential to the making of a contract of the character of the operating agreement is derived from Section 2881, Vol. 1, Code 1912, which permits an electric light company "to lease its property and franchises to another upon the conditions therein specified."

The relation being that of landlord and tenant or lessor and lessee, it follows that the contention of the appellant, that it is not liable for the payment of the license fee upon the gross receipts of its business derived from the operation of the power development, upon the theory that in the collection of such revenues it was acting in a fiduciary capacity as agent of the power company, is untenable. The tax imposed by Section 269, Vol. 1, Code 1912, therein called a "license fee," is manifestly an excise tax, laid under the benefit theory of taxation upon the public service corporation named for the privilege of exercising their corporate franchise and carrying on their business within the State. 26 R. C. L., p. 36, § 19; *Ware Shoals Mfg. Co. v. Jones,* 78 S. C. 221, 58 S. E. 811. The measure of the tax is volume of business or "gross income for business done." Gross income means the total receipts from a business before deducting expenditures for any purpose. Black's Law Dictionary; *German Alliance Ins. Co. v. Van. Cleave,* 191 Ill. 410, 61 N. E. 94, 96. It has not been questioned that the $1,436,035 in controversy constituted "gross income." Since it was gross income collected by the Columbia Company upon its own contracts from its own customers for business which could only be done by it in the exercise of its corporate franchises under express statutory authority as lessee of the power company, it was clearly the gross income of the Columbia Company contemplated by the statute as the measure of its liability for the privilege of so exercising its franchises and carrying on its corporate business. Obviously, expenditures made for the use of property operated

Cola. Ry., Etc. Co. *v.* Tax Commission    495

480]                    October Term, 1921

or rents paid for property leased are of precisely the same nature as expenses borne by a business on account of interest for money borrowed, for carrying charges on property owned, or for liability on capital invested. The payments to the power company assumed by the Columbia Company under the operating agreement were identical in character with and exactly equivalent to the carrying charges on capital invested, costs of maintenance, and fixed charges of the Columbia Company would have had to bear, in the business if it had owned the property of the power company in fee. The Columbia Company, therefore, was no more entitled to deduct the $1,436,035 paid or credited to the power company than it was entitled to deduct from its remaining gross receipts expenses incurred for the use or maintenance of the Columbia Canal or expenditures for interest upon its own mortgage bonds. We are therefore constrained to hold that the sum in question was a part of the "gross income" of the Columbia Company within the meaning of the statute.

But even if it be admitted that the sum in question was a part of the gross receipts of the Columbia Company, it is contended that such receipts were for business done by it "in connection with" the power company for which it is only liable for "its proportion," and that such proportion is only the profit or surplus of $134,784, accruing to the Columbia Company from the total receipts of $1,436,031 credited on its books to operation of the power company. By the terms of Section 361, Art. 10 Vol. 1, Code 1912, the public service corporations therein named, for the evident purpose of aiding the tax officials of the State in assessing and levying the corporation license fees imposed by other sections of Article 10, are required to make certain annual reports of gross earnings or gross receipts. Subdivision 13 of said Section 361 is as follows:

"And in the case of navigation companies, waterworks companies, power companies, light companies, the entire

gross receipts of the company, including all sums earned or charged, whether actually received or not, for business done within this State for the fiscal year then next preceding, including the companies' proportion of gross receipts for business done by it within this State in connection with other companies."

It has not been suggested that the tax authorities of the State are bound by the reports so made or controlled thereby in charging and collecting the license fee imposed by Section 369 on the "gross income" of such companies. But conceding that the provisions of subdivision 13 are to be given due weight if not controlling force in determining what is gross taxable income, it is apparent that the primary object there in view is to prevent the corporations named from failing to include in their annual reports receipts which should properly and justly be returned. So they are mandatorily required to report "the entire gross receipts," including all sums earned or charged, whether actually received or not. To avoid the possibility that business done in connection with another might not be reported as business of the reporting company alone, it is further expressly required that the return shall include such company's "proportion of gross receipts for business done by it within the State in connection with other companies." The connection here contemplated is analogous to the well-recognized relationship between connecting carriers of freight, passengers, and intelligence, where charges and tolls collected by one frequently include proportions due by others on acount of through transportation or a joint service undertaken. It is the character of agency relationship or connection considered by the Court in the case of *Southern Express Company v. Hood, supra.* "Proportion of receipts for business done" contemplates a definite portion of the charges and tolls collected in accordance with the reporting company's definite proportion of a joint service rendered. Manifestly, a lessee's "proportion of gross receipts for busi-

ness done in connection" with another is not the proportion left after paying the lessor's rent.   It is true that the word "connection," as appellant argues, is extremely broad in meaning and scope. But the argument overreaches in that there is a "connection" between every corporation doing business in contractual relation with another. Thus corporation A, a cloth mill, contracts to buy the output of corporation B, a yarn mill. There is a business connection upon which the gross receipts of both corporations is entirely dependent. Yet it would scarcely be contended that corporation A would be entitled to deduct from its taxable "gross receipts" the amount paid to corporation B from its yarns. That the "connection" of the statute does not include the connection of purchaser and seller or of debtor and creditor would seem too clear for argument. *State v. United Electric, etc., Co.,* 90 Conn. 452, 97 Atl. 857; *People ex rel. Genesee, etc., Co. v. Sohmer,* 162 App. Div. 207, 147 N. Y. Supp. 726; Id. 212 N. Y. 598, 106 N. E. 1040.   If not connections of that character, certainly the relationship of landlord and tenant, conferring upon the lessee absolute ownership of the property for all practical purposes during the existence of the leasehold estate (16 R. C. L., p. 619) is not such a connection.   The lessee operates the leased property as his own, and business done by the lessee could not be "business done in connection" with the lessor, whose only interest in the business is a creditor's to enforce his claim, secured or unsecured, for rent.   Obviously, the elimination of the agency relationship or connection removes any reasonable ground for contention as to "proportions" between two or more corporations as connecting companies.

There remains for consideration appellant's contention that it should in any event be allowed credit pro tanto upon the license fees assessed against it for the amount of the tax already paid by the power company on the sum of $134,784 erroneously paid or credited by the Columbia Company

32 S. C.—119

to the power company as gross income. If the power company during the period involved returned as "gross income" and paid the tax on $134,784 more than it received, the corporation entitled to assert a claim on that account, in so far as the State is concerned, is the power company and not the Columbia Company. If the Columbia Company under the terms of the operating agreement paid out more for the power company on account of taxes than it was obligated to pay, its right to adjustment and reimbursement is against the power company. We think the Circuit Judge correctly held that the payment in question having been voluntarily made by the power company, as a distinct corporation, the Columbia Company was not entitled to the credit claimed. As a payment voluntarily made with full knowledge of the facts the power company could not recover it back. *Robinson v. City Council,* 2 Rich. 317, 45 Am. Dec. 739; *Smith v. Hutchinson,* 8 Rich. 266; *Kenneth & Gibson v. S. C. R. Co.,* 15 Rich. 295, 98 Am. Dec. 382; *Hardaway v. Southern Ry. Co.,* 90 S. C., 488, 73 S. E. 1020, Ann. Cas. 1913D, 226. The fact that the reports of the two companies were made and indorsed as made "in connection" with each other could in no wise affect the independent duty of each corporation to report its own gross receipts or the separate liability of each for its own license fees. But such fact would unquestionably charge the Columbia Company as well as the power company with knowledge of the facts under which such alleged overpayment was made. If the power company could not recover the excess thus voluntarily paid, it would seem entirely clear that the Columbia Company could not now recover the overpayment in the form of an offset or credit against its own overdue taxes, separately and independently accruing upon its own gross receipts or income. It may be added that careful consideration has been accorded appellant's suggestion that this credit should be allowed as a matter of good conscience to the end that the same re-

ceipts should not be twice taxed.   In view, however, of the provisions of Section 137, Vol. 1, Code 1912, severely penalizing failure to report receipts and to pay license fees as required, and in face of the fact that the erroneous reports of the power company were made and the taxes assessed thereon paid by the Columbia Company in connection with its own reports, which failed to include, as admitted, the sum of $123,074 of gross receipts from the Winnsboro contracts, etc., of the power company, as well as the $1,436,035 of gross receipts here involved, the appealing force of that suggestion is dissipated.

For the reasons indicated, the decree of the Circuit Court is affirmed.

MR. JUSTICE WATTS did not participate on account of sickness.