BARKER v. THE ST. LOUIS, IRON MOUNTAIN & SOUTH-
ERN RAILWAY COMPANY, *Appellant.*

In Banc, December 22, 1894.

1. **Railroad**: PASSENGER: EJECTION FROM TRAIN: EVIDENCE. Plaintiff was ejected from the rear of a passenger car, by defendant's train employees, among them the conductor, who afterwards went to the other end of the car where he made a statement to a passenger who became a witness in the cause and was allowed by the trial court to testify to that statement; it was to the effect that he ought to have broken his (plaintiff's) neck; *held*, that the statement was not admissible against the railway company, either as an admission, or as part of the *res gestæ.* (BLACK, C. J., and BRACE and MACFARLANE, JJ., dissenting.)

2. ———: ———: ———: ———. The conductor of a passenger train represents the company in the management and control of the train; but he has no authority to bind the company by admissions of his motive, made after the fact to which they relate.

3. ———: ———: ———: ———. Mere thoughts or feelings, engendered by a fact, do not alone form a sufficient connecting link between the fact and a subsequent statement about it, by an eyewitness, to bring the statement into the *res gestæ.*

4. **Appellate Practice**: EVIDENCE: HARMLESS ERROR. Incompetent evidence of a fact, which the proof of both parties otherwise establishes, is harmless, and not reversible error.

5. ———: ———. Where incompetent evidence has been admitted, over the objection of a party, the latter may cross-examine upon it, or otherwise combat it, without thereby waiving his right to have the objection reviewed upon appeal.

*Appeal from Mississippi Circuit Court.*—HON. H. C.
O'BRYAN, Judge.

REVERSED AND REMANDED.

*H. S. Priest* and *Martin L. Clardy* for appellant.

(1) Witness Travis ought to have been allowed to testify to the declarations of the passengers made while

the train was at a standstill, to the effect that Barker had just been put off. Such declarations were admissible as part of the *res gestæ*. 1 Greenleaf on Evidence, sec. 108. (2) The testimony of Oscar Johnson as to a conversation between himself and the conductor some minutes after Barker had been removed from the train, was clearly inadmissible. Greenleaf, Evidence [Redfield's Ed.], secs. 113, 114; Story on Agency, secs. 134-139; *McDermott v. Railroad*, 73 Mo. 516; *Rogers v. McCune*, 19 Mo. 558; *Adams v. Railroad*, 74 Mo. 553; *McDermott v. Railroad*, 87 Mo. 285; *Aldridge v. Furnace Co.*, 78 Mo. 563; *Devlin v. Railroad*, 87 Mo. 545; *Bevis v. Railroad*, 26 Mo. App. 22. (3) The statement of witness, that he offered to pay the conductor respondent's fare, was inadmissible and ought to have been rejected. *Perkins v. Railroad*, 55 Mo. 201. (4) It was error to refuse to allow appellant to show the extent of witness Wilson's interest in the result of the case. (5) It was error to give instruction number 3. The trite saying of Lord KENYON "that a man shall not be permitted to blow hot and cold with reference to the same transaction, or insist at different times on the truth of each of two conflicting allegations according to the promptings of his private interest," may be invoked. (6) This was not a case for exemplary damages and instruction number 4, ought not to have been given, but instruction number 10, ought to have been given. (7) The statute authorizes the conductor to put off any passenger who refuses to pay his fare or behaves in an offensive manner near any dwelling house (R. S. 1889, sec. 2581), and instructions number 6 and 12, asked by appellant, ought to have been given. (8) The damages awarded in this case are excessive. The physician who treated respondent says his injuries are not permanent. Indeed, he says as Dr. Grimstead does; that he has entirely recovered.

*Wilson Moore* and *James A. Boone* for respondent.

(1) The testimony of the witness Travis was properly excluded because it was hearsay, was no part of the transaction, having taken place after the injuries occurred, not in the presence of any of the parties to the transaction, nor at the place where it occurred, but in another car and purported to be a narrative of something that had passed. It is not claimed that the passenger with whom Travis had the conversation either saw the transaction or had any connection with it, therefore, the declaration or conversation of the passenger is no part of the *res gestæ*. 1 Greenleaf on Evidence, secs. 123–124; *Senn v. Railroad*, 108 Mo. 146; *State v. Walker*, 78 Mo. 388; *Smith v. Railroad*, 108 Mo. 250. (2) The statement of the conductor that plaintiff ought to have broken "his darned neck" was competent evidence. It was explanatory of the act in question, part of the *res gestæ;* it further shows that the conductor's act was wanton and willful. *Harriman v. Stowe*, 57 Mo. 95; *Daley v. Railroad*, 97 Mo. 172; *Stein v. Railroad*, 31 N. E. Rep. 180; 1 Greenleaf on Evidence, sec. 108; *Hermos v. Railroad*, 50 N. W. Rep. 584. (3) Instruction number 3, was a correct and proper declaration of law under the pleadings. *Lemon v. Chanslor*, 68 Mo. 351; *Garth v. Caldwell*, 72 Mo. 627; *Daily v. Houston*, 58 Mo. 365; *Brown v. Railroad*, 20 Mo. App. 429. (4) Instruction number 4, was properly given, because the petition charges, and the evidence showed, that the conductor and brakeman wantonly and maliciously and with violence threw respondent off of the train, and it is proved that the appellant continued them in its employ, thereby ratifying their wanton, malicious and cruel act, and, under these circumstances, it is a proper case for exemplary

damages. *Graham v. Railroad*, 66 Mo. 538; *Malec v. Railroad*, 57 Mo. 21; *Newman v. Railroad*, 2 Mo. App. 402.

BARCLAY, J.—This is an action to recover damages for personal injuries sustained by plaintiff by reason of his alleged unlawful ejection from defendant's train.

The defense is that plaintiff was justifiably ejected, and that no unnecessary force was used in putting him off. The defensive allegations were put in issue by plaintiff's reply. The cause then came to trial in due course.

The jury found for plaintiff in the sum of $7,500, under instructions which need not be closely examined, since the cause should go back for another reason, and the objectionable features of the old instructions can be removed in event of another trial.

It may be well, however, to mention (before leaving the subject of the instructions) that they were framed so as to authorize the jury to award, not merely compensatory damages for plaintiff's injuries, but also exemplary damages, in the discretion of the jury, if they found that the conductor, and other agents of defendant, acted wantonly and maliciously in ejecting him from the cars.

There was evidence given by plaintiff and defendant, respectively, tending to support their several theories of the case already outlined.

Plaintiff's testimony was to the effect that he was ejected from the rear platform of the last car of one of defendant's passenger trains, by the conductor and brakeman, one dark night, about 10 or 11 o'clock, in September, 1890, without cause, while the train was in motion, and in a dangerous place.

On the other hand, defendant's evidence accounted for the rejection by plaintiff's refusal to pay fare,

insulting conduct on his part toward fellow passengers, particularly women; negatived all unnecessary force, and any unlawful act by defendant's agents, and especially denied that he was ejected while the train was in motion.

During plaintiff's case, one of his witnesses was allowed to testify that he (the witness) was in the smoking car when a stop occurred. After that stop, the witness started back to the rear of the train. He met a man on the way who told him of the fact that plaintiff had been ejected. Witness then entered the last car, from the rear end of which plaintiff had been put off, and his testimony then goes on thus:

"I went right in; I rushed in the car and asked Mr. Howe if he put that man off, and he said he did. I asked him to stop and get him; I told him I was afraid he was hurt, and he just remarked that he ought to have broke his darned neck, or damned neck, I couldn't say for certain which it was."

This testimony was objected to as incompetent, irrelevant and calculated to mislead the jury; but the objection was overruled and defendant duly excepted. The court remarked, in making the ruling, "The declarations of Captain Howe are competent."

The witness above quoted testified, on his direct examination, that this conversation with the conductor, Mr. Howe, took place about eight or ten feet from the front door of the rear passenger car; and that the train "had stopped some time before that."

On his cross-examination, he further said, on this point, in answer to a question as to the interval of time between the stopping of the train and his start from the smoking car, that, to the best of his knowledge it was eight or ten minutes.

This statement is thought by some of my learned colleagues to have been intended by the witness to

refer to some other "stop" than that at which plaintiff was put off.

At all events, it is clear that the conversation with the conductor was not later than these eight or ten minutes after the ejectment. It may have been earlier; but it was plainly after the fact; after the conductor had finished the act, and had gone to the other end of the car where he met Mr. Johnson, the witness.

The whole evidence does not bring that conversation into any other relation to the act of plaintiff's ejection, than is indicated by the facts given above.

The question then is, was the conversation admissible.

The main ground on which plaintiff seeks to justify its admission is that it formed a part of the *res gestæ*. On that ground my learned brother, MACFARLANE, has sustained its admissibility, though, it seems to me, he apparently experiences some difficulty in reaching that result.

In Missouri it is too well settled by precedents to admit of doubt that no such conversation could be given in evidence with the force of an admission by defendant. *Price v. Thornton* (1846), 10 Mo. 135; *Rogers v. McCune* (1854), 19 Mo. 558; *McDermott v. Railroad* (1881), 73 Mo. 516; *Adams v. Railroad* (1881), 74 Mo. 553; *Aldridge's Adm'r v. Midland, etc., Co.* (1883), 78 Mo. 559; *Devlin v. Railroad* (1885), 87 Mo. 545.

The conductor was employed to represent the company in the management and control of its train.

The company was answerable for his actions within the fair scope of that employment. But the company was certainly not bound by any declaration of his motives which did not accompany, or form part of some act or transaction within the apparent line of the service for which he was employed.

But it is needless to again go over the ground

which the last group of decisions covers.    Under those cases it is plain that, if the conversation between the witness and the conductor in this case has any proper standing as evidence, it can not be as an admission, but must be as a part of that essential, or descriptive, matter belonging to the main transaction itself, which the law calls *res gestæ*, for want of any English term, equally expressive.

It is far from my present purpose to attempt any sort of definition of *res gestæ*.

Definitions are, no doubt, useful and necessary to impart general conceptions of the subjects with which jurisprudence deals; but they do not always suffice to solve the difficulties met in the practical administration of law.

In the case at hand, the train men ejected the plaintiff from the train a few minutes, at least, before the conversation in question took place.    The former act is the fact with which the conversation must be connected as a circumstance, to bring the conversation properly into the *res gestæ*.

The conversation had two distinct bearings as a piece of evidence.    *First*, it embraced an implied admission that the conductor had put the plaintiff off the train; and, *secondly*, it indicated motive, that is to say, hostility to plaintiff.    Proof of the former, we might overlook as harmless, having no prejudicial effect on defendant's rights; for both sides admitted that plaintiff was ejected from the train.    *La Duke v. Township of Exeter* (1893), 97 Mich. 450.

But upon the question of the conductor's motive of hostility to plaintiff in ejecting him, the conversation was vitally material, and could not justly be considered harmless, in view of the issue of exemplary damages which the court saw fit to submit to the jury. The plaintiff was not entitled (as against the present

defendant) to prove that motive by a declaration of the conductor after the fact, as the Missouri cases already mentioned show.

The interval of time after the main fact is not, of itself, of controlling importance, though entitled to weighty consideration in determining what are *res gestae*.

The testimony indicates that the conversation of the witness with the conductor had no connection whatever with the scene out of which the alleged cause of action arises.

Nor was the conductor's statement in any way connectible with that scene as a circumstance of it. It was an entirely independent event, notwithstanding it occurred within a comparatively short time after the act in which plaintiff played a part. But, so far as concerns any relation between the ejection of plaintiff and the conversation, the latter might as well have occurred eight or ten days, as two or three or ten minutes, afterwards.

Mere thoughts or feelings, engendered by a particular occurrence or fact, do not, in my opinion, form of themselves a sufficiently substantial connecting link, between the fact and the subsequent talk of an eyewitness about it, to make that talk a part of the *res gestae* of the fact. The suggestion to that effect in the learned opinion of my brother MACFARLANE does not, with due respect, seem to me maintainable, in its application to the case at bar.

Without attempting to declare any general rule as to what matters constitute *res gestæ*, and confining the ruling to the immediate facts of this case, it would seem to me very clear (were it not for the contrary opinion of some of my associates) that the conductor's declaration is no part of the *res gestæ* in the case before us.

In my opinion the court should have excluded it.

2. Nor can it matter, in the result, that the defendant's counsel, on cross-examination, asked the witness to repeat his account of the interview with the conductor. That course did not amount to a waiver of the right to urge the exception already saved to the ruling of the court in admitting that interview.

Counsel might properly conform to that ruling for the purposes of the trial, without thereby waiving the right to review the admission of incompetent evidence that had come in, over his objection. After that evidence was before the jury, he might then combat it, or meet it, as best he might, without waiving the exception already taken. *Tobin v. Railroad* (1891), 18 S. W. Rep. 996; *Martin v. Railroad* (1886), 103 N. Y. 626.

In my opinion the judgment should be reversed and the cause remanded for the reasons above given. It is so ordered. GANTT, SHERWOOD and BURGESS, JJ., concur. BLACK, C. J., and BRACE and MACFARLANE, JJ., dissent.

MACFARLANE, J. (*dissenting*). Not being able to concur in the opinion of the majority of the court, I desire to express the grounds of my dissent.

The court, against the objection of defendant's counsel, permitted Oscar Johnson to testify as follows:

"*Q.* Did you hear of the fact that Mr. Barker had been put off the train by your conductor? *A.* Yes, sir.

"*Q.* If after that time you had a conversation with the conductor, you may state where it was and tell the jury what he said? *A.* Just after he had been put off I started back to the coach that he was in; I met a man by the name of Richardson, and was talking to him about the fact; I met him just before I got in the

car, right on the step, and he told me of the transaction. I went right in; I rushed in the car and asked Mr. Howe (the conductor) if he put that man off and he said he did. I asked him to stop and get him; I told him I was afraid he was hurt, and he just remarked that he ought to have broke his darned neck.''

In view of the importance of ascertaining the exact relation of the act of expulsion to the declaration of the conductor, and owing to a wide difference of opinion in respect to the time that had elapsed between one and the other act, it is thought proper to state somewhat in detail the evidence bearing upon that question.

Said witness Johnson further testified that he met Richardson between the cars, who then gave him the first information he had of the expulsion; and that he met the conductor in the rear car within eight or ten feet of the front door at which place the conversation occurred. Richardson testified that he was standing at the front door of the rear car when plaintiff was ejected from the back door, and turned immediately to go to the next car, and met Johnson between the cars, and informed him that plaintiff had been put off. It was shown by the evidence of other witnesses that, as soon as plaintiff was expelled, the conductor went into the front car. Taking this evidence alone, it is very clear that the declaration, which was admitted in evidence, was made before the conductor could walk the length of the car, after the expulsion. In this state of facts the evidence was admitted.

Up to this time the witness Johnson had said nothing about the train having stopped. On further direct examination witness testified:

''Q. At that time, Mr. Johnson, when you were crossing from the smoking car across the platform into the ladies car was the train running, or not? A. Yes, sir.

"*Q.* Do you know whether the train had stopped just before? *A.* Just before I met Richardson?

"*Q.* Yes, sir? *A.* Well, it had stopped some time before that, I could not tell exactly the time.

"*Q.* Was it at that time? *A.* No, sir."

On cross-examination the witness testified:

"*Q.* What attracted your attention. Why did you start in the ladies' car? *A.* I could not tell how it happened that I started.

"*Q.* You just happened to start? *A.* Yes, sir; I very often go from one car to another.

"*Q.* Did you not start into the car because the train had stopped? *A.* No, sir.

"*Q.* You said it had stopped awhile before you had started in? *A.* Yes, sir; I think it had made a little stop.

"*Q.* How long before you started in? *A.* Well, my best knowledge it would be eight or ten minutes before.

"*Q.* Might it not have been more or less? *A.* It could not have been much less; it might have been some more * * *.

"*Q.* It had stopped recently before? *A.* Yes, sir; some little time before it had made a halt."

The learned judge who wrote the opinion of the majority assumes that, from Johnson's own evidence it clearly appears that the declaration of the conductor was made eight or ten minutes after plaintiff was expelled from the train. If that were so, we would agree that the evidence would not have been admissible. But we do not so understand the evidence.

To comprehend the meaning of the witness Johnson it is necessary to state further that there had been one stop of the train between its starting point and the time this declaration was made. To this all witnesses agreed. The witnesses of plaintiff testified that the

only stop made was at a station which had been passed some miles before plaintiff had been expelled. Witnesses of defendant testified that the train was stopped at the time plaintiff was put off. Considering all the evidence of the witness Johnson, there can not be a doubt that, when speaking of the train stopping eight or ten minutes before the expulsion, he had reference to the stop at the station and not to one made when plaintiff was expelled. Indeed, he testified that no stop was then made. His request to the conductor to stop and take plaintiff on board again clearly shows that the expulsion had then just taken place. The trial judge evidently so understood it, and counsel for defendant never intimated the contrary until on the argument in court *in banc*.

But, as I understand the opinion of the learned judge, he holds that the declaration was not admissible if it was made after the act of expulsion had been completed, and to that proposition I dissent.

As a rule, derivative, or hearsay, evidence is not admissible to prove the fact admitted or declared. The person who makes the statement should be called to testify to the fact in order that, by the test of an oath, and of cross examination, all the circumstances may be developed, and the weight to be given to the evidence determined. Giving in evidence the uncorroborated and interested declaration of a third person for the purpose of proving the truth of the fact declared, and thereby binding a party to the suit, should never be permitted, unless the declaration was made at such a time, and under such circumstances, as will raise the presumption that the one making it spoke the truth. All the authorities agree that such declarations are admissible when they form a part of and characterize the fact or transaction to be proved. They then become verbal acts, and are admissible as such, and not, strictly

speaking, as declarations or admissions.  They form a part of the *res gestæ*.

One of the exceptions to the general rule, that hearsay evidence is not admissible, is applied to the declarations and admissions of an agent when offered to prove an act, or transaction, with which the principal is charged.  The exception is only made when the declaration constitutes a part of the principal fact to be proved.  The declaration of an agent is not binding on the principal, unless it falls within this exception. What constitutes a part of the *res gestæ*, in any case, whether affecting the admissibility of the declarations of an agent or of the declarations of third persons, is determined by precisely the same rules.

The rule and its limitations are concisely and, at the same time, comprehensively stated in 21 Am. and Eng. Encyclopedia of Law, p. 99, as follows:

"The rule is that evidence of words or acts may be admissible (notwithstanding the general rule against derivative evidence) on the ground that they form part of the *res gestæ*, provided that the act which they accompany is itself admissible in evidence, and that they reflect light on, or qualify, that act.  But they must be so connected with the main fact under consideration as to illustrate its character, to further its object, or to form, in conjunction with it, one continuous transaction.  If declarations are made some time before the act and stand alone by themselves, they are not within the rule and are inadmissible.  * * *  But if declarations of a past occurrence are made under such circumstances as will raise the reasonable presumption that they are the spontaneous utterances of thoughts created by, or springing out of, the transaction itself, and so soon thereafter as to exclude the presumption that they are the result of premeditation and design, they will be admissible as part of the *res gestæ*."

The difficulty has never been so much in the rule itself as in its application to individual cases. Whether a particular declaration form a part of the *res gestæ* is always a question for the decision of the court. No definite rule, which can be applied to each case, can be given, because the circumstances of no two acts, or transactions, are precisely the same. All the circumstances must be considered, and the court should be satisfied that the declaration was the "spontaneous utterance of thoughts created by, and springing out of, the transaction itself;" in other words, that the declaration was, in the circumstances, a spontaneous expression of truth.

When the declaration of an agent is offered to prove and charge the principal with an act, resulting in personal injury to another, all the circumstances should be considered, the time and place at which made, the nature and effect of the act and injury, the excitement, fright and other mental conditions of the agent making the declaration, and of other persons. If, from all these circumstances, the court is satisfied that the agent, without time to premeditate, expressed truly and spontaneously his thoughts in regard to a fact within his knowledge and in issue, and to prove which he would have been a competent witness, the evidence would be admissible.

It will be seen that exact coincidence of time between the act and declaration, though an important circumstance, can not be made a positive test of the admissibility of such declarations. In case of a derailment of a train, or a collision, there is often no time for previous declarations, but in view and presence of the excitement, the horror and the sympathy, spontaneous declarations of the agent, as to the cause of the disaster, would carry with them convictions of their truth.

That coincidence of time is not the true test may be drawn from our own decisions. In *Harriman v. Stowe*, 57 Mo. 93, admissions made an hour or more after the accident were admitted. This case goes beyond any recognized rule, and would not probably be followed under any circumstances. In *Adams v. Railroad*, 74 Mo. 553, after deceased had been struck, after the train had been stopped, two of the train men went back to the place of the collision. *Held*, that statements then made by them were not admissible. And generally it has been said, though probably unnecessary to the particular decision, that such declarations to be admissible should be coincident with the events to which they relate. *Devlin v. Railroad*, 87 Mo. 545; *Aldridge's Adm'r v. Midland, etc., Co.*, 78 Mo. 565; *McDermott v. Railroad*, 87 Mo. 298.

The question was last considered and the authorities reviewed in *Leahey v. Railroad*, 97 Mo. 172. While the declarations, in that case, were those of the injured person, the principle upon which they are made admissible is the same. The court, after a careful consideration, reached the following conclusion: "The better reasoning is, that the declaration, to be a part of the *res gestæ*, need not be coincident, in point of time, with the main fact to be proved. It is enough that the two are so clearly connected that the declaration can, in the ordinary course of affairs, be said to be the spontaneous exclamation of the real cause. The declaration is then a verbal act, and may well be said to be a part of the main fact or transaction. Again, if the subsequent declaration and the main fact at issue, taken together, form a continuous transaction, then the declaration is admissible. Much, therefore, depends upon the nature and character of the transaction in question, for it may be, and often is, of a continuing character. It can not be said that a mere subsequent

declaration will, of itself, furnish a sufficient connecting circumstance." This decision met with the concurrence of all the judges. See cases cited and reviewed. This conclusion seems to be in accord with the best considered cases. See 21 Am. and Eng. Encyclopedia of Law, *supra*, and cases cited in notes.

Now let us apply these principles to this case. The principal fact to be proved was the manner in which plaintiff was ejected from the train. Evidence that the expulsion was wantonly done was admissible. The conductor was a competent witness to prove the manner in which the expulsion was made and he had knowledge of the fact. Evidence by the conductor that, when he ejected plaintiff, he was indifferent as to the consequences to him, would have been competent. Declarations of the conductor made while in the act of the expulsion, which were indicative of malice and wantonness, could have been proved under all of the authorities.

We are of the opinion, taking into consideration the time and place in which it was made, the character of the act, and all the circumstances surrounding it, that the declaration admitted in evidence, was so connected with the expulsion of the plaintiff, as to show that what was said on the occasion was the spontaneous expression of the thoughts and feelings of the conductor at the time the act was done, and to characterize the act itself. The conversation occurred within a few seconds after plaintiff was put off. The conductor leaving the scene and Johnson approaching it, they met before the former had passed the length of the car. The conductor was required to use some force and was necessarily more or less excited. The night was dark and stormy. The train was running on an embankment three feet high. When plaintiff was expelled he fell upon the ground seven feet from the

track and his leg was broken in two places. The evidence tends to prove that while the conductor signaled the engineer to stop the train plaintiff was expelled before it came to a stop. In these circumstances, almost in the very presence of the scene of the expulsion, with the train leaving plaintiff in the storm and darkness, the witness expressed sympathy for him, and a fear that he had been injured, and asked that he be taken on board again. In these circumstances the declaration, which shows anger, ill-will and perfect indifference to the result, is made by the conductor.

I experience no difficulty whatever in reaching the conclusion that the declaration was sufficiently connected with the fact to be proved to form a part of the act itself, and to characterize it. Indeed, to reach any other conclusion, under the evidence as contained in the record, would result in overruling the latest and most carefully considered cases of this court, and in setting at nought well established principles of the law of evidence, as declared by the most respectable courts and text writers of this country. BLACK, C. J., and BRACE, J., agree with me.