McILVAINE et al., Respondents, v. FIRST NATIONAL BANK of Frederic, Wisconsin, Appellant.

(146 N. W. 574.)

1.  **Trial—Evidence—Objections to Questions—Necessity of Repeating Objections After Ruling.**

Where defendant's first objection, presenting the question of evidence of declarations of one claimed to have been defendant's co-conspirator, was overruled, **held**, that it was not necessary to repeat the same objection to each subsequent question referring to the same conversation, in order to reserve the point as to competency of the evidence.

2.  **Same—Objection to Questions—Waiver by Cross-examination—Hostile Attitude Toward Admitted Evidence.**

While a party will waive his objection to admitted evidence if he does not maintain his hostile attitude, yet his cross-examination of his adversary's witness as to incompetent testimony already received over his objection, will not waive the objection, unless he makes the witness his own.  Green v. Hughitt, 5 S. D. 452, explained.

3.  **Same—Objections to Incompetent Admitted Evidence—Non-waiver by Contradictory Evidence.**

Where incompetent evidence has been admitted over a party's objection, his production of contradictory evidence is not a waiver of his objection.

4.  **Evidence — Conspiracy — Admissions of Co-conspirator — Res Gestae.**

In a suit for conversion of purchase price of cordwood owned by plaintiffs and another, plaintiff's contention being that their co-owner deposited the proceeds of such purchase-price with defendant bank, to which bank all of said co-owners had given a chattel mortgage upon the wood to secure

a joint indebtedness, and that said co-owner and the bank entered into a conspiracy to apply such proceeds to his personal debt, **held**, that the admission of evidence of his declarations to that effect, made some two years after the conversion, and therefore not part of the **res gestae**, was prejudicial error, such evidence being entirely incompetent.

(Opinion filed March 21, 1914.)

Appeal from Circuit Court, Pennington County. Hon. LEVI McGEE, Judge.

Action by Clarence N. McIlvaine and others against the First National Bank of Frederic, Wisconsin, to recover proceeds of converted personal property. From a judgment for plaintiffs, and from an order denying a new trial, defendant appeals. Reversed.

*Chamberlain & Hall,* and *A. W. Wilmarth,* for Appellant.

It is necessary to show the conspiracy before the plaintiff can show the declarations of any party charged as a co-conspirator to bind the other co-conspirator subsequent to the time, and it is incompetent. Any declaration made by a co-conspirator after the time the conspiracy is alleged is not evidence. Further, the plaintiff must establish the conspiracy before the testimony or any declarations are admitted.

The court erred because of allowing the next four questions and answers on the grounds, and because of the law as laid down in the authorities last cited. The plaintiffs up to this time had offered no evidence of a conspiracy as existing between the defendant bank and Coonan, and the declarations of Mr. Coonan, as an alleged conspirator, was incompetent until some evidence of conspiracy was shown. 2nd Ed., Vol. 6, A. & E. of Law 867-868. Vol. 8, Cyc., 682-683, and cases cited. Note 90.

*Gardner & Churchill,* for Respondents.

Where testimony is admitted in evidence without objection, error cannot be predicated upon overruling of a subsequent objection to the same or similar testimony. Fallon v. Rapid City, 17 S. D. 570; Miller v. McConnell, 23 S. D. 137; Davis v. Holy Terror, 20 S. D. 399; Gale v. Shillock (Dak.) 29 N. W. 661; Sobek v. Bidwell (S. D.) 124 N. W. 431; Green v. Hughitt, 5 S. D. 452.

GATES, J. This action was begun in June, 1912. Aside from allegations relating to the corporate capacity of the defendant bank and the appointment of Ida Jones as administratrix of

the estate of Alfred A. Jones, deceased, the complaint is as follows :

"II. That at and prior to the 15th day of May, A. D. 1910, Alfred A. Jones and the plaintiffs Clarence N. McIlvaine and Charles A. Seeley and the defendant D. Ray Coonan were the owners of upwards of three thousand (3,000) cords of wood in Polk county, in the state of Wisconsin, of the value of twelve thousand ($12,000) dollars.

"III. That on or about the month of May, 1910, the said wood came into the possession of the defendant D. Ray Coonan, who owned an undivided one-fourth interest therein, and thereupon the said defendants, fraudulently conspiring and confederating together to cheat and defraud the' plaintiffs Clarence N. McIlvaine, Charles A. Seeley, and said Alfred A. Jones, now deceased. and to deprive them of their three-fourths interest in and to said property, and the proceeds thereof, and without the knowledge or consent of plaintiffs, unlawfully took, converted and disposed of two thousand (2,000) cords of said wood of the value of eight thousand ($8,000.00) dollars, and converted and disposed of the same, and the proceeds thereof, to their own use, to the damage of plaintiffs in the sum of six thousand dollars."

D. Ray Coonan was made a party defendant, but was not served with process. The answer of the defendant bank may, for the purpose of this opinion, be considered as a general denial. The evidence on behalf of plaintiffs consisted of testimony given by Milton C. Smith as to the value and quantity of wood at the place in question, together with the testimony of plaintiffs McIlvaine and Seeley. The evidence on behalf of defendant consisted of the testimony of Messrs. Copeland and Savage, officers of defendant bank, and D. Ray Coonan. The plaintiffs McIlvaine and Seeley, together with Coonan and Alfred A. Jones, now deceased, bought 600 acres of timber land near Frederic, Wis. The other three entered into a contract with Coonan, as the Keystone Fuel Company, by which Coonan was to cut the timber, sell the same, and pay the proceeds to plaintiff Seeley. All four of them executed a chattel mortgage to defendant bank on 1,500 cords of wood piled on the land near spur 68 to secure payment of $2,500. The evidence on behalf of plaintiffs tended to show that Coonan sold upwards of 2,000 cords of the wood, and applied the proceeds

in payment of his own obligations to the defendant bank, and that the bank knew that the money so applied was the proceeds from the sale of plaintiff's wood. The evidence on behalf of defendant tended to contradict the evidence on behalf of plaintiffs. The jury returned a verdict in favor of plaintiffs and against the defendant bank in the sum of $4,781.25. From the judgment and order denying a new trial, the defendant appeals.

When the plaintiff McIlvaine was on the witness stand he testified to having had a conversation on May 27, 1912, at Huron, S. D., with Coonan with reference to the disposition of the wood and its proceeds. None of the officers of the defendant bank were present at this conversation. It will be noticed that this date was about two years after the alleged conversion. Thereupon he was asked by his counsel the following question, to which the defendant objected as herein shown

(1) "Q. Now, I will ask you to state to the jury what, if anything, Mr. Coonan said to you with reference to the disposition he had made of this wood and its proceeds? (The defendant objects on the ground that, if the purpose of this, which it must, be to show a conspiracy or confederation existed at the time the wood was disposed of: In the first place it is necessary to show the conspiracy before they can show the declarations of any party charged as a co-conspirator to bind the other co-conspirator subsequent to the time is incompetent. Any declarations made by a co-conspirator after the time the conspiracy is alleged are not competent evidence. Further, that the rule is that they must establish the conspiracy before the testimony or any declarations are admitted. Ruling reserved by the court. To which ruling the defendant duly excepts, which exception is allowed by the court.)"

That question was not answered. At that time the fact of the alleged conspiracy had not been established. The witness then testified to matters tending to show the existence of the conspiracy. The attention of the witness was then recalled to the conversation with Coonan, and the following took place:

(2) "Q. Now, I will ask you to state what he said about it? (The defendant objects on the ground that it is subsequent to the time of the alleged conspiracy, and for that reason incompetent for one conspirator to make any declarations that would be bind-

ing upon a co-conspirator after the conspiracy was ended or completed.)

"By the Courrt: Objection overruled; but it must be connected. (The defendant further objects to that evidence of a conspiracy, as there is no evidence of a conspiracy at the present time or up to the present time. Objection overruled. To which ruling of the court the defendant duly excepts, which exception is allowed by the court.)"

(3) "Q. You may state the conversation you had with Coonan with reference to the disposition of the wood and its proceeds, if any? A. I asked. Mr. Coonan what became of this wood; he told me all the funds was put in the First National Bank of Frederic, and they disposed of it on debts contracted by him and the Keystone Fuel Company and others."

(4) "Q. What did he say further, if any? A. I asked him if it was not the account under the chattel mortgage which we signed, and he said it was."

(5) "Q. I will ask you what, if anything, he said as to whether or not he had advised the bank what funds there were? A. He did."

(6) "What did he say about that? A. He said he so advised them that it was funds from the sale of this wood under this chattel mortgage."

During the examination of the plaintiff Seeley his attention was called to the same conversation, and the following proceedings took place:

"Q. State to the jury in substance what that conversation was? (The defendant makes the same objection to this conversation that was made to the testimony of Mr. McIlvaine, that this occurred subsequent to the time of any claim of any conspiracy on the part of this bank and Ray Coonan, and for that reason it is incompetent, and also on the other and further ground that there is no testimony at any time of any conspiracy between the bank and Ray Coonan. Objection overruled. To which ruling defendant duly excepts, which exception is allowed by the court.) A. Mr. Coonan said he had sold the wood, and deposited the money in the bank at Frederic.

"Q. What else did he say about it (The defendant makes the same objection. Objection overruled. Exception: exception

allowed by court.) A. And said it had been used, some to apply on his account.

"Q. Did he state anything about whether or not the bank knew where the funds were from? (The defendant makes the same objection. Objection overruled. Exception, which was allowed by the court.) A. Yes, sir; he said they did."

[1] It is the contention of appellant that the court erred in allowing the plaintiffs to testify as to the alleged admissions of Coonan, and that the reception of such testimony was extremely prejudicial to appellant. While not admitting that the testimony was incompetent, respondents contend that McIlvaine testified fully in regard thereto, without objection, in answer to questions Nos. 3, 4, 5. and 6 above, and that therefore his testimony was admissible, and that therefore the objections to the questions put to the witness Seeley were unavailing, and that his testimony was admissible in spite of the objections. Both McIlvaine and Seeley were cross-examined in regard to this conversation. The defendant's witness Coonan denied the conversation. The contention of respondents is summed up in their brief as follows: "Appellant, having permitted the testimony with reference to the admissions of Coonan to be admitted without objection, and having afterwards fully cross examined two witnesses with reference to this same conversation, and having then placed upon the witness stand Coonan himself to deny the conversation, is certainly not now in position to urge any alleged error of the court in overruling certain objections to this class of testimony." In Abbott's Civil Jury trials (3d Ed.) p. 322, we find the rule as to the necessity of repeating an objection to evidence laid down as follows: "It is not necessary to repeat an objection to evidence sought to be introduced if such objection can only call for a repetition of the court's ruling on the first objection; but, if there be a change in the circumstances of the trial so that a situation will be presented to the court upon a repetition of the objection different from that exisent when the first objection was made, the objection should be renewed, for otherwise the admission of the evidence will not be reviewed in the appellate court. When there is an objection to evidence, and the court postpones the ruling, it is the duty of the counsel interposing the objection to call the matter to the attention of the court at some subsequent time, and demand a ruling upon the objection."

In addition to the cases therein cited in support of the text, see Salt Lake City v. Smith, 104 Fed. 457, 43 C. C. A. 637, a decision by the Circuit Court of Appeals of this circuit. We are of the opinion that the defendant made sufficient objection to raise the question as to the competency of the alleged declarations of Coonan. While the objections to question No. 1 would probably not avail because of the change in the situation between the time of the first and second questions, and because the court postponed its ruling upon the objections to question No. 1, still the objections to question No. 2 were sufficient to reach questions Nos. 3, 4, 5, and 6. It was unnecessary to repeat the objections to each question.

[2] From the same volume of Abbott, on page 323 the rule as to waiver of objections previously made is stated as follows (the paragraph numbers are ours):

"After evidence has been admitted over the objection of a party, it is necessary that he maintain his hostile position toward it, for otherwise he will waive his objection.

"(1) If he make the evidence admitted in the face of his objection his own by introducing the same evidence, either on cross-examination or as a part of his own case, he will be deemed to have waived his objection to the admission of the evidence.

"(2) Nevertheless these rules do not prevent his cross-examining the witness upon the evidence admitted over his objection.

"(3) Or preclude the introduction of similar evidence on his own part to meet the case made by the evidence given by his adversary, to which he objected."

In addition to the citations therein under paragraph 2, see Simpson v. Watrus, 3 Hill (N. Y.) 619; Duff v. Lyon, 1 E. D. Smith (N. Y.) 536 ;and Peacock v. Gleesen, 117 Iowa, 291 90 N. W. 610. In the last case Ladd, C. J., said: "Some propositions in practice ought to be treated as too well settled to require vindication, and that pertinent cross-examination waives nothing is one of them." In Green v. Hughitt, 5 S. D. 452, 59 N. W. 224, a question had been asked and answered and then an objection was made which was sustained. In regard thereto this court said: "The objection came too late; the question had been answered, and the answer was not stricken out, and remained as part of the evidence in the case." This was a full and complete determination of the

question, and that which followed was clearly *obiter*. The court then said: "But later on in the trial witness Cline, on cross-examination, was interrogated as to the matter fully, and, if there was any error in the court's ruling, it was cured by the admission of the evidence subsequently." If by that statement this court intended to lay down a rule different from that announced by Ladd, C. J., above quoted, it is now disapproved. No case was cited to "vindicate" such ruling so contrary to sound precedent. It is certainly unreasonable to say that a party must forego cross examination of a witness or else lose the benefit of a valid objection to a wrong ruling of a court. The cases cited in appellant's brief, viz., Gale v. Shillock, 4 Dak. 182, 29 N. W. 661, Davis v. Holy Terror Min. Co., 20 S. D. 399, 107 N. W. 374, and Miller v. McConnell, 23 S. D. 137, 120 N. W. 888, all come under paragraph 1 of the last quotation from Abbott's work, and therefore have no application to the rules specified in the second and third paragraphs thereof.

[3] We also hold in accordance with the third paragraph of said citation from Abbott that the offering of the testimony of Coonan by defendant to contradict the testimony of McIlvaine and Seeley as to that conversation did not waive the defendant's objections above referred to.

[4] It is perhaps needless to add that the reception in evidence of the testimony of McIlvaine and Seeley as to the admissions of Coonan was extremely prejudicial to appellant. Without it there was but little to support the allegations of the complaint as to conversion. Such evidence was entirely incompetent under the universal rule applicable to the admissibility of the declarations of co-conspirators, because the alleged declarations were made long after the alleged common design was accomplished, and they did not form a part of the *res gestae*. Jones on Evidence, § 245; 8 Cyc. 680; Stephens' Digest of the Law of Evidence, p. 10.

We have carefully examined the contentions of respondents necessary to be determined before considering the erroneous rulings of the court in regard to the evidence, and find such contentions entirely without merit, and that it would serve no useful purpose to go into detail in regard thereto.

Inasmuch as the questions raised under appellant's other as-

signments of error are not likely to arise upon a new trial, we find it unnecessary to consider them.

Because of the prejudicial error above pointed out, the judgment and order denying a new trial must be reversed.