12036

GREEN v. SHAW

(134 S. E., 226)

1. PHYSICIANS AND SURGEONS.—Evidence of doctor's reputation for carefulness *held* inadmissible on issue of negligent treatment.

2. PHYSICIANS AND SURGEONS.—Evidence of doctor's reputation for carefulness *held* inadmissible on issue of willful negligence.

3. APPEAL AND ERROR.—Erroneous admission of testimony of doctor's reputation for carefulness, in action against him for alleged negligent treatment, *held* not cured by cross-examination on · same subject.

Before BONHAM, J., Richland, February, 1924. Reversed and remanded for a new trial.

Action by Marian E. Green against Dr. Arthur E. Shaw. Judgment for defendant, and plaintiff appeals.

*Messrs. R. B. Herbert & Geo. L. Dial, Jr.,* for appellant, cite: *Evidence of good reputation of physician not admissible in action based on negligence in particular instance:* 193 P., 187; 27 P., 404; 196 S. W., 279; 8 N. E., 832; 83 Hun., 267 10 R. C. L., 117; 21 R. C. L., 405; 5 Thompson on Negligence, Sec., 6712. Cases distinguished: 107 S. E., 250; 67 S. C., 493; 46 S. E., 332.

*Messrs. Douglas McKay, John W. Crews* and *J. A. Crawford,* for respondent, cite: *Party bringing out testimony on cross-examination, though he objected on direct examination to same, cures objection:* 105 S. C., 423; 90 S. E., 32; 100 S. C., 115; 84 S. E., 422; 70 S. C., 315; 49 S. E., 879; 48 S. C., 337; 26. S. E., 651. *General reputation of physician for skill admissible in action for negligence:* 116 S. C., 165; 107 S. E., 250; 110 S. C., 173; 96 S. E., 517; 67 S. C., 493; 46 S. E., 332; 22 S. C., 200; 5 Rich., 153; 1 Strob. 372; 4 Wigmore on Ev., Sec., 1984. *Doctrine of res ipsa loquitur not applicable in 'action for negligence .causing X-ray burn:* 127 A., 776; 124 A., 130; 117 A., 922; 115 A., 27; 112 A.,

179; 228 S. W., 397; 13 A. L. R., 1403; 204 S. W., 450; 192 N. W., 38; 174 N. W., 466; 157 N. W., 519; 35 App. D. C., 57; 228 U. S., 233; 57 L. Ed., 851; 78 F., 433; 102 P., 138; 87 P., 844; 124 S. E., 405. *Evidence that other physicians would have employed other methods not evidence of negligence:* 129 S. C., 424; 96 S. E., 154; 108 S. C., 472; 94 S. E., 869; 106 S. C., 84; 90 S. E., 264; 93 S. C., 295; 76 S. E., 711.

July 19, 1926.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

The plaintiff is a lady residing in the city of Columbia and engaged in the business of interior decorating. The defendant, Dr. Arthur E. Shaw, is a prominent physician of that city. About the 5th and 19th of November, 1922, he treated the index finger of the right hand of the plaintiff by X-ray for the purpose of removing two warts therefrom. The plaintiff brought this suit for $10,000 for damages alleged to have resulted from the treatment.

The relevant portions of the complaint are as follows:

"(3) That on or about the 5th day of November, 1922, the plaintiff engaged the defendant to treat the index finger of her right hand by X-ray for the purpose of removing two small warts on said finger.

"(5) That the defendant in administering the X-ray treatments on or about the 5th of November, 1922, and on or about the 19th of November, 1922, and that as a result of the X-ray treatment her finger was severely burned.

"(5) That the defendant in administering the X-ray treatment negligently, wantonly, and willfully failed to properly protect the finger from the powerful and dangerous rays which were being used, and exposed the finger for too long a time to said rays, and severely and dangerously burned the plaintiff's finger in administering said treatment to such an

extent that the plaintiff was unable to use her hand for many weeks after the treatment, has suffered intense and excruciating pain, has been unable to perform her duties in connection with her occupation as an interior decorator, has a permanent injury to her finger, and has a deformity of her finger which will permanently disfigure her hand and make it more difficult for her to carry on her chosen profession and has incurred medical expense in obtaining treatment for the said burn.

"(6) That the aforesaid injuries were caused by the negligence, wantonness, and willfulness of the defendant in failing to properly protect the plaintiff's finger with a metal guard or shield while administering said treatment, in exposing the finger to the powerful rays for 13 minutes, which was too long a period of time, in failing to properly administer the treatment as above indicated, and in burning the plaintiff's finger by the use of the X-ray; all to the plaintiff's damage in the sum of $10,000."

The following is the answer of the defendant:

"(1) Admits the allegations of paragraphs 1, 2, and 3.

"(2) Admits the allegations of paragraph 4 that on or about the 5th and 19th of November, 1922, he administered X-ray treatments to the plaintiff, and admits further that the finger in question was burned, but has neither knowledge nor information sufficient to form a belief that the burning was of the nature contended for in said paragraph.

"(3) Denies specifically the allegations of paragraph 5 as to the manner in which this defendant administered the X-ray treatment and that this defendant dangerously burned the plaintiff's finger, and has neither knowledge nor information sufficient to form a belief as to the remaining allegations of said paragraph.

"(4) Denies specifically the allegations of paragraph 6, and denies further each and every other allegation in said

complaint contained not hereinabove specifically admitted or explained."

The jury gave a verdict for the defendant. Thereafter a motion was made for a new trial, which was overruled by the trial Judge.

The plaintiff now appeals to this Court by four exceptions, imputing error in too main particulars (1) Error in admitting the testimony of Dr. Jennings and of Dr. McIntosh "as to the efficiency and carefulness of Dr. Shaw and as to his reputation"; and (2) error on the part of the Court in refusing plaintiff's motion for a new trial on the ground that the verdict was against the overwhelming preponderance of the evidence.

When Dr. R. T. Jennings, a witness for the defendant, was on the stand, he testified as follows; this testimony being admitted by the Court over the objection of the plaintiff:

"Q. What is your observation of Dr. Shaw as to his efficiency or carefulness in general?

"Mr. Herbert: We object: we haven't attacked Dr. Shaw's reputation as a physician. That hasn't been put in issue. He may be a very good physician, and he may have done a very careless thing; he may be very careful and he may have done a very careless thing.

"The Court: it seems to me it has some probative value. I think it is competent.

"Mr. Herbert: Dr. Shaw's reputation as a careful physicain?

"The Court: Yes, sir.

"Mr. Herbert: I ask to note my objection.

"A. He has always been very careful with me and I have got good results.

"The Court: I don't think he is entitled to go into specific cases, but only his general reputation."

When Dr. James H. McIntosh, who was also a witness

for the defendant, was on the stand, he testified along the same line:

"Q. From your general knowledge, please state what is Dr. Shaw's reputation professionally as a careful and expert operator.

"Mr. Herbert: We object for the same reasons.

"The Court: The same ruling.

"Witness: I have used him in a great many cases where X-ray work was necessary.

"The Court: One minute—what is his reputation?

"Witness: His reputation is good as an X-ray man."

This suit was based upon certain specific acts of the defendant, alleged to be negligent, willful, and wanton. No attack was made upon, nor does this action involve, his general skill, competency, ability, or reputation. A physician might be ever so skillful or competent in a general way, or might have an unexcelled reputation, and yet be guilty of the grossest negligence in his treatment of a particular case. It is clear to reason, therefore, that, in the case at bar, testimony as to Dr. Shaw's reputation was inadmissible, and the admission of such testimony was reversible error. This view is supported by the weight of authority.

In 5 Thompson on Negligence, § 6712, it is said:

"Where the physician or surgeon is charged with negligence, and not with incompetency, the matter of his fitness is not an issue, and evidence to show competency or skill is clearly inadmissible."

In 30 Cyc., 1585, we find:

"Where the action is for negligence, and the skill of the physician is not put in issue, he cannot show his general reputation for skill."

In 22 Am. & Eng. Ency. (2d Ed.), 809, we find:

"The general reputation of a physician for competency and skill is inadmissible in an action for malpractice, because the issue is his conduct in the particular case."

In Jones on Evidence, § 148, it is said:

"We have already seen that in actions based on negligence it is irrelevant to prove that the plaintiff or the defendant has on similar occasions been careful or negligent; in like manner it is irrelevant to show that either party has hitherto had the reputation of being prudent or negligent."

In *Stevenson v. Gelsthorpe,* 10 Mont., 563; 27 P., 404, the Court said:

"In the trial of this case the Court allowed, over the objection and exception of defendant's counsel, certain witnesses to testify as to the defendant's reputation, at Sand Coulee, for skill and ability as a physician. This was clearly improper. Defendant's reputation as a physician was not at issue. It was his specific acts in the treatment of a certain case, and the facts as to whether his acts were unskillful and negligent in this treatment was the matter in issue. A doctor's reputation for skill and ability will not exonerate him, where gross negligence and want of the application of skill is alleged and proved. Nor can the fact that a doctor is reputed to be negligent or unskillful be allowed as proof to establish negligence or unskillful treatment in a particular case, because he may have treated that case with unusual skill and care. The introduction of that evidence was not only improper from a legal view, but it was of a character which may have unjustly prejudiced defendant's case before the jury upon a point where defendant had made no preparation to defend. It is likely such improper evidence misled two-thirds of the jury who concurred in the verdict."

In *Engstrom v. Dental Co.,* 97 Or., 634; 193 P., 187, it was held that (quoting syllabus) :

"In an action where negligence on the part of a dentist is charged, evidence as to his reputation for care is inadmissible."

In *Baker v. Hancock,* 29 Ind. App., 456; 64 N. E., 38, which was an action for malpractice, defendant's testimony as to the successful treatment of other patients by him for the same disease was held inadmissible.

*Hackler v. Ingram* (Tex. Civ. App.), 196 S. W., 279, was an action against a physician for alleged negligence in the performance of a particular operation. The Court held that evidence of the general skill and efficiency of the physician was not admissible, and said:

"However careful and competent a person may be generally, such fact is no defence to a specific act of negligence."

*Holtzman v. Hoy,* 118 Ill., 534; 8 N. E., 832; 59 Am. Rep., 390, was an action against a physician for malpractice in treating a fractured leg. The Court said:

"As a physician or surgeon cannot bring the requisite skill to any case unless he has it, it follows the professional skill of the defendant was, if not in express terms, at least by implication, put in issue in this case, and the *onus probandi* was upon the plaintiff to show his want of such skill. The proper and only mode of doing this was by proving that he did not exercise it in the treatment of the plaintiff's leg. It does not, however, follow that because of the defendant's skill, or rather the want of it, was put in issue, that it could be either established or disproved by showing his general reputation. While his skill, or the want of it, was put in issue, his reputation in that respect was not put in issue and therefore evidence to establish it was properly excluded. Suppose it appeared from the evidence that the treatment of the plaintiff's leg was proper, and in every respect according to the most approved surgery, and evidence of the character offered had been admitted, would it have availed the plaintiff anything if it further appeared from the evidence that the defendant was generally reputed to be an unskillful and unsafe surgeon? Surely not. The hypothesis here suggested, as we conceive, is but a presenta-

tion from a different standpoint of the principle contended for, but in a way that more forcibly illustrates its unsoundness."

The use of dangerous instrumentalities, such as electricty, radium, etc., in the treatment of disease, demands not only skill and competency, but the exercise of such care as may be necessary and required by reason of the inherent danger of the instrumentality employed.

The highly specialized expert employing such dangerous instrumentalities and the more humble general practitioner employing the simpler remedies are alike subject to the rule that they cannot escape the consequences of their negligent acts in a special case by showing or attempting to show their general reputation for skill and competency.

The oral contention of the respondent that the allegation of willfulness in the complaint takes the case out of the rule, and makes competent the evidence complained of, is without merit. This does not in any way change the rule of law. The allegation implies that the defendant was not only negligent but was actually willful in his disregard of the rights of his patient in the proper treatment of her disease, the only difference being that under this allegation punitive damages may be recovered.

But the respondent contends that even if the admission of the testimony was error, such error was cured and the objectionable testimony rendered competent by the appellant's cross-examination of defendant's witness, Dr. McIntosh, as follows:

"Q. Dr. Shaw has a good reputation? A. Yes, sir.

"Q. He would say the same thing for you, and you would say the same thing for the most of our doctors? A. Yes, sir.

"Q. You try to get along together? A. Yes, sir."

In support of this position, the respondent cites the following South Carolina cases: *Smith v. Brabham,* 48 S. C.,

337; 26 S. E., 651. *Hyland v. Telephone & Telegraph Co.,* 70 S. C., 315; 49 S. E., 879. *Smith v. Union Buffalo Mills,* 100 S. C., 115; 84 S. E., 422. *Cleckly v. Atlantic Coast Line R. Co.,* 105 S. C., 423; 90 S. E., 32. In the Brabham Case the testimony complained of was brought out by the appellant on his cross-examination of one of the plaintiffs, it not appearing that the witness had given the same or similar testimony on direct examination. The testimony, therefore, was unquestionably the appellant's testimony, and the Court rightly held that he could not be heard to complain of the admission of testimony which he had himself brought out in the first instance. In the Hyland Case the Court held that certain objectionable testimony was made competent by being admitted *without objection.* In the Buffalo Mills Case the Court overruled the appellant's exception to the admission of certain testimony on the ground that *"other witnesses,* in response to questions of appellant, testified in reference to the same matters." (Italics added.) In the Cleckley Case the testimony, on defendant's objection, was *ruled out* on direct examination, but was afterwards brought out by the defendant himself on cross-examination. The testimony was clearly defendant's and the Court overruled his objection based on its admission. A mere superficial examination of these cases shows that in no one of them was the same question raised or ruled upon as in the case at bar. It must be borne in mind that in the case at bar the appellant brought out (1) on cross-examination (2) of the same witness only who had testified to the same facts on direct examination (3) only the same testimony that had been brought out *over his objection* on direct examination.

The defendant in this case offered as witnesses two Columbia physicians to testify to his reputation as a physician. The appellant strenously objected to this testimony, but the Court overruled his objection and admitted the testimony. The appellant having done all in his power, by proper and

timely objection, to exclude the objectionable testimony, elicited on cross-examination of the same witness a repetition of the same testimony that had been given on direct examination. Without making the testimony elicited the testimony of the cross-examining party, cross-examination may serve a number of useful purposes in the trial of a case, such as, for instance, testing the credibility of the witness or combating the effect of the testimony upon the minds of the jury. And we are unable to see why a litigant who has duly objected to the admission of incompetent testimony should be required to choose between foregoing the opportunity to accomplish such legitimate purposes through cross-examination of the testifying witness and waiving his right of appeal based on the Court's error in admitting the testimony.

The appellant's cross-examination of the witness in the case at bar coming clearly within the limits of strict cross-examination as herein set forth, we hold that she did not waive thereby her right to have her objection to the admission of the incompetent testimony reviewed on appeal. This holding is not in conflict with any rule laid down by this Court heretofore, and is supported by the great weight of authority.

In 2 Ency. of Pl. & Pr., 523, it is said:

"Where an exception is duly taken to the admission of illegal evidence it is not waived by cross-examination the witness with respect to it."

In Abbott, Civil Jury Trials (3d Ed.) p. 323, we find the rule as to the waiver of objections stated thus:

"After evidence has been admitted over the objection of a party it is necessary that he maintain his hostile position toward it, for otherwise he will waive his objection. If he make the evidence admitted in the face of his objection his own by introducing the same evidence, either on cross-examination or as a part of his own case, he will be deemed

to have waived his objection to the admission of the evidence. Nevertheless, these rules do not prevent his cross-examining the witness upon the evidence admitted over his objection or preclude the introduction of similar evidence on his own part to meet the case made by the evidence given by his adversary, to which he objected."

In *Barker v. Ry. Co.*, 126 Mo., 143; 28 S. W., 866; 26 L. R. A., 843; 47 Am. St. Rep., 646, the Court, commenting on certain objectionable testimony, admitted over the objection of the appellant, and about which the defendant's counsel cross-examined the witness, said:

"Nor can it matter, in the result, that the defendant's counsel, on cross-examination, asked the witness to repeat his account of the interview with the conductor. That course did not amount to a waiver of the right to urge the exception already saved to the ruling of the Court in admitting that interview. Counsel might properly conform to that ruling for the purposes of the trial, without thereby waiving the right to review the admission of incompetent evidence that had come in, over his objection. After that evidence was before the jury, he might then combat it, or meet it, as best he might, without waiving the exception already taken."

In *Feuchtwanger et al. v. Manitowoc Malting Co.*, 187 F., 713; 109 C. C. A., 461, we find:

"But we do not countenance the contention that an exception to the admission of incompetent evidence is waived because the wrong party endeavors to break its force by cross-examination. So the party would be doubly wronged."

In *Finkelstien v. Ry. Co.*, 75 N. H., 303; 73 A., 705, the Court held:

"The plaintiff's cross-examination of the defendant's motorman, who had testified that the report stated the truth, as to his recollection of the report, did not amount to a waiver of the exception to its admission. The witness'

credibility was properly tested in this way after the report had been admitted as evidence before the jury. Clearly, there was no waiver of the exception."

In *Marsh v. Snyder,* 14 Neb., 237; 15 N. W., 341, the Court said:

"Another point made on behalf of the defendant is that, although this testimony was inadmissible, the error of admitting it was cured by the cross-examination of the witness respecting it. * * * Where an exception is duly taken to the admission of illegal testimony, it is not waived by a mere cross-examination of the witness respecting it."

*McIlvaine et al. v. First Nat. Bank,* 33 S. D., 389; 146 N. W., 574, was a case for damages alleged to have been suffered by the plaintiffs through the conspiracy of certain of the defendants, in an attempt to defraud the plaintiffs of their interest in certain cordwood in which the plaintiffs owned an interest. On the trial of the case, certain objectionable testimony was admitted by the Court over the objection of the defendants. Afterwards, the defendants cross-examined the witness in reference to the same matter. On appeal to the Supreme Court, it was contended that the defendants, by cross-examining the witness of the plaintiffs along the same line, waived their objections to the admissibility of the testimony. The Court after reviewing the rule of law as laid down in Abbott's Civil Jury Trials, at page 322, said:

"It is certainly unreasonable to say that a party must forego cross-examination of a witness or else lose the benefit of a valid objection to a wrong ruling of a Court"— citing cases.

In *United Rys. & Electric Co. v. Corbin,* 109 Md., 442; 72 A., 606, It appears that Corbin had received the injury through contact with an electric wire which the defendant had negligently allowed to fall down upon the street. During the trial certain objectionable testimony was admit-

ted, over the objection of the appellant, and was made the basis of an exception on appeal. The appellant cross-examined the same witness with respect to the testimony admitted over its objection. It was contended by the appellee that the appellant, by such cross-examination, waived its objection to the admission of the testimony in question. The Court on this point said:

"When testimony has been admitted and an exception noted, counsel may deem it necessary to cross-examine the witness on the subject; and, if it is simply a cross-examination, he ought not be deprived of his exception, provided the record shows he does not intend thereby to waive it, and that ought to be inferred when it is strictly cross-examination. There is perhaps some confusion in the cases on this subject, but the rule ought not be carried to the extent of placing an attorney in the position that he must either waive his exception or permit the evidence in chief to stand without cross-examination."

It appearing that the testimony objected to was inadmissible in the first instance, and it not appearing that the appellant waived her objection to the testimony by cross-examination relating thereto, the appellant's first and second exceptions are sustained, and the judgment of the Circuit Court is reversed and the case remanded to that Court for a new trial.

MESSRS. JUSTICES WATTS, COTHRAN and BLEASE, and ACTING JUSTICE RAMAGE, concur.

MR. CHIEF JUSTICE GARY did not participate.