LUCY S. DUDLEY *v.* GRACE HOSPITAL *et al.*

(No. 7226)

Submitted May 24, 1932.   Decided June 11, 1932.

*Hoagland French* and *Russell S. Ritz,* for plaintiff in error. *Strother, Sale Curd & St. Clair* and *Crockett & Tucker,* for defendant in error.

LIVELY, JUDGE:

In September, 1930, Dr. E. Vermillion performed a tonsil operation on plaintiff in the Grace Hospital, and plaintiff

seeks in this action to recover damages from Dr. Vermillion and the Grace Hospital for injury to her eye alleged to have been sustained during the operation. Dr. Charles F. Hicks who administered the anaesthetic was made a party defendant to the action, but died before trial; and the action, was dismissed as to him. The jury found in favor of defendants, and plaintiff prosecutes error.

Plaintiff submitted to the operation on recommendation of her family physician, who sought thereby to relieve her run-down condition, and relates that Dr. Hicks, then superintendent of Grace Hospital, administered the anaesthetic after a pad had been placed over her eyes, and that while she was on the operating table Dr. Hicks raised the pad from her eyes and then replaced it when she "noticed something hitting" her in the eye, whereupon she exclaimed "Oh", and Dr. Hicks said: "Lay still and try to go to sleep." When plaintiff reacted from the anaesthetic, she complained of great pain in her eye; and after an oil treatment had been given her, Dr. Vermillion, a specialist in eye, ear, nose, and throat treatments, examined the patient, and he testified that on that examination there was no scratch or scar, but on the following day, he found "the beginning of an ulcer on the cornea" of the eye. According to Mrs. Clark, a visitor in plaintiff's hospital room, Dr. Vermillion, on the day of the operation, said "her eye had a scratch or cut on it." Plaintiff's throat healed rapidly and after her discharge as a patient, she sought the services of two other eye specialists (Drs. Schiefelbein and Blaydes), and the former referred her back to the hospital and Dr. Vermillion from whom she received treatment for several months and until she instituted this action. Dr. Schiefelbein testified that plaintiff has lost about four-fifths of her sight in the injured eye and that the condition is likely permanent.

Plaintiff admits that she made no disclosure of the reason for the pain to Dr. Hicks while he was administering the ether, to Dr. Vermillion during the several months' treatment of her eye, or to Dr. Blaydes when he examined her. The nurse who prepared plaintiff for the anaesthetic noted that plaintiff's eyes were red at that time, caused by plain-

tiff's crying. Dr. Blaydes, testifying for defendant, stated he examined plaintiff in November, 1930, and found an acute sinus condition or acute antrum on the left side with pus therein, which "will cause an ulcer of the eye"; and Dr. Schiefelbein, after stating he had no opinion as to what caused the ulcer, admitted the condition of the tonsils "might have had something to do with it" and that when he examined her he found other infection, in addition to the ulcer, connected indirectly with the eye. The evidence discloses that the anaesthetic was administered in the manner recognized among physicians and surgeons in "this community" as the standard and proper way to give an anaesthetic.

The declaration charges that:

> "Yet the said defendants, Charles F. Hicks and E. Vermillion, not regarding their duties as such physicians, and defendant Grace Hospital, a corporation, by its officers and servants, not regarding its duties as operator of said hospital, but wholly disregarding their duties and obligations to plaintiff, so unskillfully and negligently conducted themselves in that behalf, that by and through their want of skill and care, in some way, or by some means, without the knowledge of plaintiff, and beyond her power to explain, caused an injury to plaintiff's left eye; * * *."

Physicians, testifying on behalf of defendants, were permitted, over plaintiff's objections, to discuss the skill and experience of Dr. Hicks as a surgeon and anaesthetist. Plaintiff contends that this was prejudicial error, since Dr. Hicks' reputation for skill and carefulness were not in issue. Plaintiff's counsel, in their brief, place emphasis on the words "in that behalf" as the basis for their argument that "no attack was made upon the general reputation for skill and carefulness of anyone." From a reading of the declaration, the words "in that behalf" could have reference to the administering of the anaesthetic, the performance of the operation, or both. There is no *specific act* of negligence to be found in the charge; but whatever negligence with which defendants were chargeable arose "by and through their want

of skill and care". The language used did not limit the "want of skill and care" to any particular act. It was a direct charge on defendants' proficiency generally. Liability would, of course, necessarily be predicated on the acts of the particular treatment; but where the allegation in the pleadings of the "want of skill and care" is general and not confined to a specific act, a doctor's reputation for skillfulness and care become a proper inquiry for such consideration as the jury deems requisite. The declaration does not charge or the evidence sustain the proposition that Dr. Hicks did any specific negligent act in the administration of the anaesthetic to the patient. It is only by a general statement in the pleadings and by such inference as is adduced by proof that Dr. Hicks was negligent.

The distinction in the cases cited by plaintiff and by defendants goes to the issue involved in the respective cases. In *Green* v. *Shaw*, (S. C.) 134 S. E. 226, *Holtzman* v. *Hoy*, (Ill.) 8 N. E. 832, *Stevenson* v. *Gelsthrope*, (Mont.) 27 P. 404, and *Hackler* v. *Ingram*, 196 S. W. 279, particularly relied upon by plaintiff, specific acts in the treatment of a certain case were alleged therein, so that the want of skill and care generally was not expressly made a part of the issue. In *Holtzman* v. *Hoy*, *supra*, there was a charge of negligence and unskillfulness on defendant's part, as a physician, in the treatment of plaintiff's leg for a fracture. Evidence of defendant's reputation for skill was offered and refused. The appellate court, in affirming the trial court, stated:

> "As a physician or surgeon cannot bring the requisite skill to any case unless he has it, it follows the professional skill of the defendant was, if not in express terms, at least by implication, put in issue in this case, and the *onus probandi* was upon the plaintiff to show his want of such skill. The proper and only mode of doing this was by proving that he did not exercise it in the treatment of the plaintiff's leg. It does not, however, follow that because the defendant's skill, or rather the want of it, was put in issue, that it could be either established or disproved by showing his general reputation. While

his skill, or the want of it, was put in issue, his reputation in that respect was not put in issue, and therefore evidence to establish it was properly excluded."

Defendants cite *Leighton* v. *Sargent*, 27 N. H. 460, 59 Am. Dec. 388, wherein the declaration alleged "that the injury occurred because defendant so negligently, carelessly, and unskillfully behaved himself in and about the treatments, etc.; that for want of skill, and the proper application of splints, etc., by and through the mere neglect, default, and unskillfulness of the defendant, the plaintiff was injured." The court stated:

"It is from this statement uncertain whether it is to be insisted that the defendant was ignorant, and knew nothing of the proper surgical treatment of such an accident as the plaintiff had suffered; or that being properly educated and competently learned in his profession, he had acted from negligence and carelessness, contrary to what must have been his better knowledge and judgment, if he had given proper attention to the case. Nothing in the declaration confined him to either of these views; and nothing had occurred in the course of the trial to restrict the plaintiff to the point of negligence. He was therefore at liberty to take his position before the jury, that the defendant was ignorant and unskillful, or that he was negligent and careless, or, if he so pleased, that he was both unskillful and negligent. Any evidence, then, calculated to repel the inference of ignorance and unskillfulness, to show that he was a man of suitable education and acquirements for the safe practice of his profession, must surely be competent and proper. Such evidence must change the whole position of the case before the jury, because if the jury were satisfied he had proper knowledge and skill, the only question must then be whether he had adopted the course of his treatment from mistake, mere error of judgment, or from negligence and want of ordinary care."

We are in accord with the reasoning of the New Hampshire court. See similar reasoning in *Vanhoover* v. *Berghoff,*

(Mo.) 3 S. W. 72. This discussion disposes also of plaintiff's complaint to defendant's instruction No. 4, given by the court.

Counsel for plaintiff complains also of the following hypothetical question propounded to Dr. Rutherford:

> "Assuming that the patient is about to be operated upon under general ether anaesthetic at approximately 8:00 o'clock in the morning, and the operation is finished in some twenty minutes or thereabouts, and the patient reacted in two hours or thereabouts; assuming that while administering the anaesthetic the patient makes some exclamation because of some sudden pain in her eye; and assuming further that the patient had never complained of her eye before that time; assuming that on the following day an ulcer was discovered on the cornea of the eye by means of the use of coloring matter by the eye specialist in his examination, state whether or not, in your opinion, that ulcer could have formed within that period of time, because of a traumatic injury to the eye during the administering of the anaesthetic?",

to which question he answered in the negative. The error charged is that the question contained the language "on the following day an ulcer was discovered" whereas Dr. Vermillion's testimony was that he found "the beginning of an ulcer". We fail to see any inconsistency between the statements. The exact language used by a witness in the statement of a fact need not be followed in stating such fact in the hypothetical question. 22 C. J. 709. Even if this technical variation from the evidence contained in the hypothetical question could be treated as error, it was rendered unprejudicial by the testimony of the doctor on cross-examination that the ulcer might begin to form within the time specified. Error not prejudicial is not ground for reversal.

The judgment of the trial court is affirmed.

*Affirmed.*