RUTH ROBINSON *v.* DR. A. L. AMICK

(No. 9394)

Submitted January 20, 1943. Decided February 23, 1943.

*Steptoe & Johnson, Stanley C. Morris,* and *Wm. E. Miller,* for plaintiff in error.

*M. O. Litz* and *H. D. Rollins,* for defendant in error.

RILEY, PRESIDENT:

Ruth Robinson instituted this action of trespass on the case in the Common Pleas Court of Kanawha County against Dr. A. L. Amick and Kanawha Valley Hospital, seeking damages for an alleged medical malpractice. At the conclusion of plaintiff's evidence, upon motion not objected to by plaintiff, Kanawha Valley Hospital was dismissed, and upon conclusion of all evidence the jury rendered a verdict in defendant Amick's favor and judgment was entered thereon. Upon writ of error to the Circuit Court of Kanawha County, the judgment of the trial court was reversed, the jury verdict set aside, and the action remanded for a new trial. To the judgment of the circuit court, defendant prosecutes error.

The evidence discloses that on July 6, 1938, defendant, A. L. Amick, a physician and surgeon who has practiced his profession in Charleston, West Virginia, since 1907, performed an abdominal operation upon plaintiff for a fibroid tumor and discovered, in lieu of such condition, that plaintiff was pregnant. Nine days thereafter plaintiff was delivered of a fully developed child, dead at birth. On June 25, preceding the operation, defendant made a "bimanual" or "vaginal" examination of plaintiff, and defendant admits his diagnosis that plaintiff required an operation for removal of a fibroid tumor. There is variance, however, in the testimony as to what plaintiff told defendant on that occasion. According to plaintiff (who was then thirty-seven years of age) and her husband, defendant asked, "what the trouble was", and plaintiff's husband "told him just another baby", while plaintiff herself informed the doctor that she had not menstruated since the preceding October, and related to him the periods in which she had been nauseated. Defendant relates that he questioned her concerning menstruating, and that plaintiff and her husband "both said at the same time, 'That is just the point. She has gotten to the point where she is unable to do her work'", from which, defendant testified, he "inferred that she had been bleeding too much". According to defendant, he interrogated her as to the possibility of her being pregnant and quoted her reply thus: "Doctor, that is impossible. I am the mother of five children, and if I was in the family way I would certainly know it."

Dr. Amick is supported in his version by his office nurse, while plaintiff's sister's testimony challenges it. The latter quoted defendant as saying, following the operation, that "he had made a terrible mistake". That plaintiff suffered after her operation may not be denied, and there is evidence that, at the time of the trial, she was suffering from a post-operative rupture, a condition which defendant attributes to her failure to follow his instructions to purchase a proper supporting garment. It was urged by plaintiff at the trial that an X-ray examination would have disclosed that plaintiff was pregnant, and Dr. Epps, an osteo-

pathic physician, testified that such procedure "would clinch" the diagnosis. Dr. Vernon L. Peterson, a witness for plaintiff and an X-ray specialist, testified that it is "not the common practice to send them for the X-ray examination, and personally I don't believe it is negligent not to, because, after all, there is expense involved". Likewise physicians testifying in defendant's behalf asserted that defendant had followed the accepted practice for the diagnosis of such conditions in the locality in which defendant practiced, although there is the admission by at least two of the physicians to the effect that it is very hard to tell definitely whether a pregnancy or fibroid tumor exists and that they themselves have made the same mistake. A further detail of the evidence and the conflicts therein is not pertinent, for there is no contention that the jury verdict was without substantial basis. The ground for reversal by the circuit court, disclosed by its memorandum, was the admission of testimony by the trial judge of defendant's reputation for skill and care. Defendant points to *Dudley* v. *Grace Hospital et al.,* 112 W. Va. 461, 164 S. E. 670, as decisive of the admissibility of such evidence, while plaintiff, like the circuit court, differentiates that case from the instant one in asserting its incompetency.

An examination of the declaration shows that all of the allegations upon which plaintiff predicates her cause of action assert that defendant was "careless" or "negligent", or that defendant "in the exercise of the slightest care" should have known that plaintiff was not afflicted with any operable physical disorder. The single exception occurs in the allegation "that the defendant, A. L. Amick, thereupon unskilfully attempted to stitch the wound, which soon became infected necessitating her confinement in the hospital until August 8, 1938, * * *."

It is a general rule that in malpractice cases, evidence of defendant's reputation in the community and among his profession, as to skill and care, are inadmissible (41 Am. Jur. 238) unless questioned by plaintiff. Herzog, Medical Jurisprudence, page 170. See also *Green* v. *Shaw,* 136 S. C. 56, 134 S. E. 226, 48 A. L. R. 243, 249-251.

In *Dudley* v. *Grace Hospital, supra,* it was held that "in an action for malpractice, where the declaration charges 'the want of skill and care' generally and does not limit the charge to a specific act, evidence of the physician's reputation for skill and care is admissible." There defendant had undertaken to perform a tonsilectomy on plaintiff, and the declaration charged that "by and through want of skill and care in some way, or by some means, without the knowledge of plaintiff, and beyond her power to explain, caused an injury to plaintiff's left eye". The Court expressing the opinion that the language used in the declaration did not limit the want of "skill and care" to any particular act, held that it was a direct charge on defendants' proficiency generally, and therefore the doctor's reputation for skilfulness and care became a proper inquiry "for such consideration as the jury deems requisite". In the instant case, as we have noted above, the sole reference relating to skill of defendant was the reference in the declaration wherein it was charged that defendant "unskilfully attempted to stitch the wound." In the first place, such an allegation relates to a specific act, and therefore does not fall within the rule propounded in *Dudley* v. *Grace Hospital, supra.* Moreover, we do not believe that such an allegation is one which charges a lack of skill or ability on the part of the operating physician to stitch the wound but rather a careless performance. Exclusive of such allegation the gravamen of the declaration is definitely one of negligence, and therefore the general rule, quoted above, is applicable, and admission of evidence relating to defendant's reputation for skill and care was erroneous.

We are therefore of opinion that the circuit court was correct in its judgment of reversing the trial court, setting aside the verdict of the jury, and remanding the case to the Court of Common Pleas for a new trial.

*Affirmed.*